LEVENBURG v. MERRILL, LYNCH, PIERCE,
FENNER & BEANE.

1. APPEAL AND ERROR—NONJURY CASES—FINDINGS OF FACT—EVI-
DENCE.
   The Supreme Court does not reverse the decision of a trial
   court in a nonjury action at law upon a finding of fact
   unless the evidence clearly preponderates in the opposite
   direction.

2. CONTRACTS—BROKERS—CONDITIONAL OFFER TO PURCHASE.
   Evidence justified trial court in nonjury case in finding that
   plaintiff seller of stock had sufficient information from de-
   fendant broker concerning offer from prospective purchaser,
   which had attached several conditions, to understand it and
   to act accordingly.

3. SAME—OFFER AND ACCEPTANCE—CANCELLATION OF ACCEPTANCE—
EVIDENCE.
   Finding of trial court that at time when plaintiffs attempted
   to cancel sale of their stock that purchaser's offer to pur-
   chase such stock had been accepted, was irrevocable, and that
   attempted cancellation of acceptance came too late *held*, sus-
   tained by competent evidence.

Appeal from Wayne; DesJardins (George W.),
J., presiding. Submitted June 10, 1952. (Docket
No. 55, Calendar No. 45,043.) Decided September
4, 1952.

Action by Annette J. Levenburg and her husband
against Merrill, Lynch, Pierce, Fenner & Beane, a

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 3 Am Jur, Appeal and Error § 896 *et seq.*
[3] 46 Am Jur, Sales § 45.

limited partnership, for damages for claimed unlaw-
ful sale of stock.  Judgment for defendant.  Plain-
tiffs appeal.  Affirmed.

*Maxwell M. Lowe (Richard G. Eubank,* of coun-
sel), for plaintiffs.

*Dickinson, Wright, Davis, McKean & Cudlip (Dan-
iel J. Tindall, Jr.,* and *Richard C. Van Dusen,* of
counsel), for defendant.

Sharpe, J.  This is an action for damages for the
claimed unlawful sale of 300 shares of Atlantic Gulf
& West Indies Steamship Lines.  Plaintiffs, Charles
C. Levenburg and Annette J. Levenburg, in Novem-
ber, 1948, were the owners of 300 shares of the above
stock.  From 1944 to December, 1948, plaintiffs had
about 50 transactions with defendant company,
which included the buying and selling of stock.  The
majority of these transactions were margin accounts,
and the agent in charge for defendant company was
Nathan Plotkin.

On or about November 15, 1948, Plotkin informed
Mrs. Levenburg that he could get $47\frac{1}{2}$ for her Atlan-
tic Gulf & West Indies stock.  On December 2, 1948,
she authorized defendant company to sell at that
price.  It appears that on November 20, 1948, the
Manufacturers Trust Company offered to buy shares
of common stock of Atlantic Gulf & West Indies at
$47\frac{1}{2}$ per share, with a dividend of $1 per share, pay-
able December 15, 1948, to be retained by the seller.
The offer of the Manufacturers Trust Company was
subject to the following terms:

"If between 60,000 and 75,000 shares are deposited
in acceptance of the offer by 3 p.m. on December 10,
1948, all deposited stock will be purchased.  If more
than 75,000 shares are so deposited, the purchasers
reserve the right either to accept all shares deposit-

ed or to purchase not less than 75,000 shares on a pro rata basis. Should less than 60,000 shares be deposited, the purchasers reserve the right to accept and pay for such number of shares deposited, and also reserve the right to extend the final deposit date by not more than 14 days. Our customers represent that this offer to purchase is for investment and no other representations are made."

Following the conversation with Mrs. Levenburg on December 2, 1948, at which time the market price of the stock was 45¼, Mr. Plotkin made out an order directing the defendant's New York office to tender plaintiff's 300 shares to the Manufacturers Trust Company. This order was received in defendant's New York office on December 2, 1948, at 2:29 p.m. On December 3, 1948, defendant's New York office delivered the stock to the Manufacturers Trust Company.

On December 10, 1948, plaintiff, Annette J. Levenburg, instructed defendant company to cancel the sale of the stock. On December 13, 1948, plaintiffs came to defendant's office in Detroit and talked with Mr. Plotkin. As a result of this conversation defendants wired their New York office "Client would like to bust exchange if possible and sell at market." On this date the market price of the stock was 55¼. Upon receipt of the telegram the New York office contacted the Manufacturers Trust Company, and was advised by its officer in charge that there was no right to withdraw the offer to sell the 300 shares of Atlantic Gulf & West Indies Steamship Lines.

On December 16, 1948, defendant company received a letter from plaintiffs demanding a reinstatement of the stock. On December 23, 1948, the stock was selling at 64½.

The cause came on for trial before the court without the aid of a jury. On March 23, 1950, the court entered judgment in favor of defendant company.

In an opinion filed the court made the following finding of facts:

"The court is satisfied from the record in this case, first, that plaintiff, Annette J. Levenburg, was given sufficient information with reference to the proposed transaction by Mr. Plotkin to enable her to reasonably understand the nature of the same, and that if she desired more definite or detailed information from her agent or broker, it was her duty to inquire. Otherwise, he had every reason to believe that she was satisfied with the information in her possession.

"The record discloses absolutely, nothing that was withheld. The record does disclose that this matter was handled in a business-like manner, in accordance with practices, and that there was no bad faith on the part of Mr. Plotkin or overreaching on the part of his employer.

"It further appears definitely that the defendant in this case in no manner profited by the transaction except as it attempted to build the goodwill of a customer.

"There remains but one question. Was there an order for cancellation which could have been carried out on December 10th at 11:30 a.m. and was that given?

"I am not going to question for one minute that witness Annette J. Levenburg said something about 'Have you sold it?' That would be, as her counsel stated, a natural remark. The serious question, whether Mr. Plotkin said 'No'. I wouldn't be surprised if he might have said 'I will see what I can do,' because that is what he did later when they came to the office. He has no recollection of the conversation so we will accept Mrs. Levenburg's version of it. You will note that she does not ask that the offer be withdrawn, if we are going to be technical. She directs a sale of a stock that has been offered and tendered 8 days before and there is no way of determining whether it could have been withdrawn, even at that time. Definitely it could not be sold unless it

could be withdrawn and that is a very short time for a principal to give an agent to act.

"The court is of the opinion now, and I think I want you to brief this, that that sale had become absolute, upon this record, because there is no evidence whatever that 60,000 shares had not been deposited. They may have been deposited that day, they may have been deposited a week before, and the minute they were deposited, the contract, in my opinion, became absolute."

Plaintiffs appeal and urge that defendant company did not give plaintiffs sufficient information relative to the offer of Manufacturers Trust Company to purchase the stock.

The trial court found as a fact that plaintiff did have such information. We have repeatedly held that in law cases tried before the court, we do not reverse unless the evidence clearly preponderates in the opposite direction. In the case at bar defendant's agent, Mr. Plotkin, testified that in the latter part of November, 1948, he discussed the terms of the Manufacturers Trust Company's offer with plaintiff, Annette J. Levenburg, and acquainted her with the details of the offer, including the Trust Company's offer to purchase a certain number of shares at a price of $47.50 per share for an undisclosed principal, and that the expiration date of the offer was December 10, 1948.

We conclude from the above evidence that the trial court was correct in finding that Mrs. Levenburg had sufficient information concerning the offer to understand it and act accordingly.

Plaintiffs urge that they ordered defendant company to sell the 300 shares of stock, and it was its duty to cancel the order on December 10, 1948, when so ordered by plaintiffs. The difficulty with this theory is that the Manufacturers Trust Company made the offer and plaintiffs accepted the offer. It

appears that the stock was delivered to the Manufacturers Trust Company on December 3, 1948, a week previous to Mrs. Levenburg's order to "cancel the sale." There is testimony that on December 10th or 13th, 1948, the order to cancel the sale or tender was irrevocable.

Mr. K. B. Atkinson, a witness for defendant, and an employee in defendant's New York office, testified:

"It is my recollection that we were requested by Detroit to withdraw the item but were not successful. We received that request on December 13th by wire from the Detroit office. It is my recollection that I called the agent, and that they stated that under the terms of the offer, the item could not be withdrawn. It is my recollection that they said it could not have been withdrawn at any time after having been deposited."

There is competent evidence to sustain the finding of the trial court that on December 10, 1948, the sale had been made and was irrevocable.

The record clearly shows that plaintiffs accepted the offer of Manufacturers Trust Company, and their attempt to cancel the acceptance came too late. The judgment of the trial court is affirmed, with costs to defendants.

Dethmers, Butzel, Carr, Bushnell, Boyles, and Reid, JJ., concurred.

The late Chief Justice North did not sit.