520 F.2d 255
 Fed. Sec. L. Rep. P 95,104
Fred LOWENSCHUSS, Trustee for Fred Lowenschuss Associates
Pension Plan, Individually and on behalf of all other
persons and shareholders of Great Atlantic & Pacific Tea
Co., Inc. who are similarly situated, Plaintiff-Appellant,
v.
W. J. KANE et al., Defendants-Appellees,
Rachel C. Carpenter, Appellant.
 Nos. 497, 498, Dockets 74-2156, 74-2216.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 27, 1975.
Decided May 27, 1975.
 
 Charles Sovel, New York City (Abraham E. Freedman, New York City, Fred Lowenschuss, William D. Parry, Robert P. Snyder, Fred Lowenschuss Associates, Philadelphia, Pa., of counsel), for plaintiff-appellant.
 Milton Paulson, New York City, for appellant Carpenter.
 John A. Guzzetta, New York City (Bernhardt K. Wruble, Anthony E. Satula, Jr., Dennis G. Jacobs, Simpson Thacher & Bartlett, New York City, of counsel), for defendants-appellees Gulf & Western Industries, Inc. and C. G. Bluhdorn.
 Mark I. Fishman, New York City (William E. Willis, Sullivan & Cromwell, New York City, of counsel), for defendant-appellee Kidder, Peabody & Co., Inc.
 Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 The central issue on this appeal is whether a stockholder who has tendered his shares in response to a tender offer may recover damages from the offeror for failure to consummate the transaction where the failure is attributable to the intervening issuance by the court of a preliminary injunction barring the proposed acquisition. We must also decide whether genuine issues of material fact were presented which precluded summary judgment dismissing the shareholders' complaint.
 
 
 2
 Plaintiff Fred Lowenschuss is a shareholder of Great Atlantic & Pacific Tea Co., Inc. ("A & P") who tendered A & P shares to Gulf & Western Industries, Inc. ("G & W") in response to G & W's tender offer for A & P shares, announced on February 2, 1973. On February 15, 1973, after the issuance of a preliminary injunction barring consummation of the tender offer, he brought a class suit on behalf of himself and all similarly situated A & P shareholders against A & P and certain of its officers and directors, G & W and its chief operating officer, C. G. Bluhdorn, and the dealer-manager of the tender offer, Kidder, Peabody & Co., Inc., alleging breach by G & W of the tender offer contract allegedly resulting from his tender and violation of the antifraud provision of the Williams Act, § 14(e), 15 U.S.C. § 78n(e),[1] by all defendants. The A & P defendants were dismissed from the action without prejudice by stipulation entered July 16, 1973.
 
 
 3
 The instant proceeding is an appeal by Lowenschuss and by another tendering shareholder, Rachel C. Carpenter, who intervened in the proceedings, from an order of the United States District Court for the Southern District of New York, Kevin T. Duffy, Judge, entered on May 10, 1974, and supported by an opinion dated July 25, 1973, 367 F.Supp. 911 (S.D.N.Y.1973). Judge Duffy permitted Lowenschuss to maintain the action as a class suit pursuant to Rule 23, F.R.Civ.P., granted summary judgment dismissing the complaint as to all remaining defendants and denied plaintiff's motion for summary judgment. Only the latter two actions of Judge Duffy are challenged on this appeal, with both plaintiff and the intervenor arguing that summary judgment for defendants was inappropriate at this stage of the proceedings because of the existence of genuine questions of material fact, that the complaint properly stated two causes of action and that the motion of plaintiff class for summary judgment was improperly denied. We agree with appellants' first two contentions and hold, for the reasons set forth below, that the complaint does state a cause of action against G & W in contract and against all defendants under the Williams Act, and that summary judgment was improperly granted because of the existence of questions of material fact concerning both causes of action.
 
 
 4
 This is the second time that litigation arising from G & W's tender offer of February 2, 1973, has been before this Court. In a previous opinion, Gulf & Western Industries, Inc. v. Great A. & P. Tea Co., Inc., 476 F.2d 687 (2d Cir. 1973), this court (per Timbers, C. J. ) affirmed Judge Duffy's decision of February 13, 1973, reported at 356 F.Supp. 1066 (S.D.N.Y.1973), granting a preliminary injunction against the consummation of the tender offer after concluding that A & P had demonstrated a probability of success in proving Williams Act and antitrust violations. Since the facts surrounding the tender offer and the issuance of the preliminary injunction are set out fully in that previous opinion, they will only be briefly summarized here.
 
 
 5
 The tender offer was announced by G & W on February 1, 1973, and communicated to the public on the following morning. G & W offered to purchase up to 3,750,000 shares of A & P common stock (15% of A & P's outstanding shares) at $20 per share net. Upon learning of the offer Lowenschuss decided to purchase 2,000 shares of A & P stock at 185/8 on behalf of a pension plan for which he is trustee.[2] His acknowledged intention was to purchase the A & P shares and tender them to G & W.
 
 
 6
 On that same morning, February 2, 1973, A & P's management decided to oppose the G & W tender offer. It issued a press release stating its intentions and giving reasons, which was carried over the stock exchange ticker tape. Lowenschuss learned of this action shortly thereafter and attempted to cancel his purchase order. He soon rescinded this cancellation, however, when he had satisfied himself that the litigation could not constitute grounds for refusal of his tender or for rescission of the offer, since the tender offer terms did not include a "litigation-out" clause.[3] He eventually tendered his 2,000 shares to G & W on February 13, 1973, the last day upon which tender was permissible under G & W's offer.
 
 
 7
 In the meantime litigation was instituted on February 5, 1973, by G & W against A & P alleging that A & P had made false and misleading statements in the course of its opposition to the tender offer, in violation of §§ 10(b), 14(d) and 14(e) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78j(b), 78n(d) and 78n(e). A & P counterclaimed, seeking preliminary injunctive relief and alleging that G & W's proposed acquisition of A & P stock would violate § 1 of the Sherman Act, 15 U.S.C. § 1, and § 7 of the Clayton Act, 15 U.S.C. § 18, and that G & W's tender offer was in violation of §§ 14(d) and 14(e) of the 1934 Act, as amended. Following an expedited hearing upon the application for injunctive relief, Judge Duffy preliminarily enjoined the consummation of the tender offer on February 13, 1973, for substantially the reasons set out in A & P's counterclaim.
 
 
 8
 Upon an expedited appeal to this court we, on March 12, 1973, affirmed the grant of preliminary injunctive relief, holding that A & P had demonstrated probability of success in proving (1) that G & W's acquisition of A & P stock would result in a substantial decrease in competition in violation of § 7 of the Clayton Act because of market foreclosure,[4] and (2) that G & W had violated § 14(e) of the 1934 Act, as amended, by failing to disclose (a) G & W's intention to acquire a controlling position in A & P or at least to exercise influence over A & P's management and policies and (b) G & W's conglomerate holdings in food processors and distributors which indicated that its acquisition of A & P stock would probably result in violation of the antitrust laws by both companies. See 476 F.2d at 693-97. Mr. Lowenschuss filed an amicus curiae brief on that appeal on behalf of the tendering shareholders, arguing that completion of the transaction should be allowed.
 
 
 9
 On March 16, 1973, immediately after our decision affirming the issuance of the preliminary injunction, G & W announced that the offer would be extended to June 16, 1973, pending the progress of the litigation and that no new shares would be accepted. It reiterated that all tendered shares could be withdrawn on or after March 14, 1973. While we had indicated in our opinion that trial of the case should proceed at an accelerated pace, the parties evidently determined that trial preparation and trial would be too burdensome. On May 29 they agreed to stay discovery, with district court approval, for a period of 45 days. That period was subsequently extended on July 19. The tender offer, after being extended into the summer, was finally withdrawn on July 25, 1973, the date on which the district court issued its opinion granting summary judgment herein.
 
 
 10
 The instant litigation was commenced in the Eastern District of Pennsylvania on February 15, 1973, two days after Judge Duffy preliminarily enjoined the tender offer. It was ordered transferred to the Southern District on defendants' motions on April 2, 1973. None of the present defendants answered the complaint before or after transfer, choosing instead to move in June, 1973, for dismissal on the ground that no cause of action had been stated. Plaintiff Lowenschuss subsequently cross-moved for summary judgment. Judge Duffy disposed of the motions in his opinion of July 25, 1973, granting a pending motion for class determination, but dismissing the complaint on the merits. For reasons which do not concern us here a final order granting judgment on the basis of the July 25 opinion was not entered until May 10, 1974.
 
 
 11
 Diverse reasons were given by the district court for dismissal of the action. First, the complaint was interpreted to state only a claim for breach of contract. Since Williams Act claims were presented in another class action brought by Lowenschuss against the same defendants, Judge Duffy held that they were not encompassed within the complaint in this suit. With the action thus limited to contract claims, the district court found that, assuming a binding contract between G & W and the tenderor as a result of a tender pursuant to the terms of the offer, G & W was excused from performance because the preliminary injunction issued thereafter made it both impossible and illegal to consummate the transaction. Moreover, the court found that the plaintiff class had suffered no damages cognizable at law. The complaint as to Kidder, Peabody was dismissed on the ground that it was not a party to the contract allegedly breached. Plaintiffs attack essentially every aspect of the district court opinion on this appeal.
 
 DISCUSSION
 
 12
 Before analyzing the issues we must emphasize this appeal's peculiar procedural posture. None of the defendants has answered the complaint, having preferred to move for dismissal under Rule 12(b)(6), F.R.Civ.P. Nor did any of the defendants request the summary judgment granted below. The only summary judgment motion was made by plaintiff Lowenschuss.
 
 
 13
 We have sanctioned a sua sponte award by the court of summary judgment to a non-moving party where it appeared from the papers, affidavits and other proofs submitted by the parties that there were no disputed issues of material fact and that judgment for the non-moving party would be appropriate as a matter of law. Local 33, Int'l Hod Carriers Union v. Mason Tenders Dist. Council, 291 F.2d 496, 505 (2d Cir. 1961). However, as in the case of cross-motions for summary judgment, a moving party's failure to establish that the facts are undisputed does not entitle the non-moving party to summary judgment. American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 279 (2d Cir. 1967), cert. denied, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972). Nor is a cross-motion for dismissal of the complaint for insufficiency on its face necessarily to be treated as a motion for summary judgment, at least without giving all parties a full opportunity to present pertinent material dehors the pleadings. A complaint will be dismissed for insufficiency only upon a showing that plaintiff could prove no facts entitling him to relief, Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), rather than because of the absence of any material factual issue, which is essential to a grant of summary judgment.
 
 
 14
 Because of this procedural posture, we must be careful, in analyzing the award of summary judgment, not to assume that plaintiff's failure to submit affidavits or other proofs on a particular issue means that it was not genuinely disputed. Plaintiff has been faced with no contentions concerning the undisputed character of the facts and understandably has not put in any affidavits or other proofs to establish his version. Therefore, the absence of any offer of proof by one or all parties on factual issues that we deem to be material and genuine should not imply that the matter is undisputed, but merely that it has not yet been reached.
 
 
 15
 Turning first to the question of whether the district court properly construed the complaint as stating only a contract claim, the bulk of the complaint's allegations were unquestionably aimed at A & P and its management for alleged wrongdoing in connection with opposition to the tender offer. Once A & P's position was upheld by this court's affirmance of the preliminary injunction, these contentions, of course, became unsupportable and the action as to A & P was dropped. There remained allegations with respect to G & W, Bluhdorn and Kidder, Peabody which undisputably asserted a claim for breach of contract. In addition there were some allegations, admittedly sketchy, which were apparently made in support of a portion of the caption describing the suit as one arising under the "Securities Act of 1933" and the "Securities Exchange Act of 1934 and Rules Promulgated Thereunder," with jurisdiction invoked on the basis of that legislation. The complaint (Par. 22) charges that G & W and its chief operating officer Bluhdorn "warranted to the general public that the purchase of the 3,750,000 shares in question was for investment purposes and that said defendants had complied with all laws, rules and regulations pertaining to said tender offer and that there were no legal impediments to the purchase of said shares from the general public." (App. 13a).
 
 
 16
 These allegations of violation of our federal securities laws are indeed extremely general and obviously vulnerable to attack for lack of the particularity required by Rule 9(b), F.R.Civ.P., especially in the absence of any allegations of scienter or fraudulent intent, see Felton v. Walston and Co., Inc., 508 F.2d 577 (2d Cir. 1974); Segal v. Gordon, 467 F.2d 602 (2d Cir. 1972); Shemtob v. Shearson, Hammill & Co., 448 F.2d 442 (2d Cir. 1971); but cf. Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 378-79 (2d Cir. 1974), cert. denied, --- U.S.---, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). However, dismissal of the complaint on such grounds would not necessarily be final, as was the order here, but could be without prejudice to the filing of an amended complaint specifying the facts forming the basis of the claims of fraud, cf. Felton v. Walston and Co., Inc., supra; Mooney v. Vitolo, 435 F.2d 839 (2d Cir. 1970). In our view sufficient notice was given of the plaintiff's claim and the grounds upon which it rested, see Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), to entitle plaintiff to amend, cf. Schlick v. Penn-Dixie Cement Corp., supra.
 
 
 17
 In dismissing the complaint Judge Duffy did not proceed on the basis that the complaint could under no circumstances be construed as alleging a Williams Act claim. He noted that "(i)f this were the only action filed by this plaintiff, I might consider that it could be construed as including the Williams Act claims," 367 F.Supp. at 913 n.2. He based his dismissal on the mistaken impression that another action filed by Lowenschuss in the Eastern District of Pennsylvania, which had also been transferred to the Southern District of New York, where it is pending before Judge Duffy, had been brought on behalf of the same plaintiff class against the same defendants arising out of the same conduct and would therefore permit the Williams Act claims to be adjudicated separately in that action as to all parties. However, an examination of the pleadings in the two cases reveals that the classes sought to be represented, while overlapping, are not the same[5] and that adjudication in one action, therefore, would not be dispositive as to all class members. Under these circumstances the proper course was to permit Lowenschuss to pursue his Williams Act claims in the present action rather than dismiss them entirely. We have no doubt that Judge Duffy would have reached this result if he had known the true nature of the two actions.[6] Otherwise he would face the necessity of permitting amendment of the other complaint to make the plaintiff classes co-extensive. Since, as we hold below, it was error to have dismissed the breach of contract claim from the complaint in the present action, it is clear that the present action provides as suitable a vehicle as the other for adjudication of the Williams Act claims, with consolidation of both suits likely as the most expeditious means of disposing of the actions.
 
 
 18
 Furthermore, both we and the district court concluded in G & W v. A & P that there appeared to be a reasonable probability that A & P would succeed in proving the Williams Act claims, which were discussed in detail both there and in defendants' briefs in this action. Thus defendants appear to be aware of the nature of the claims and have not shown any prejudice to themselves as a result of the lack of specificity in Lowenschuss' complaint. Under these circumstances we are satisfied that sufficient notice of the Williams Act claims was given to permit their being pursued here. See Rule 8(f), F.R.Civ.P.; Maty v. Grasselli Chemical Co., 303 U.S. 197, 200-01, 58 S.Ct. 507, 82 L.Ed. 745 (1938) (per curiam); Levenson v. B & M Furniture Co., Inc., 120 F.2d 1009 (2d Cir. 1941). Should Lowenschuss fail, in response to the court's order, to particularize his fraud claims as required by Rule 9(b), F.R.Civ.P., his complaint would then be dismissible without leave to amend. See Felton v. Walston and Co., Inc., supra.
 
 
 19
 Kidder, Peabody further contends that there can be no cause of action against it under the Williams Act both because of the minor role it played in the tender offer as dealer-manager and because there are insufficient allegations in the complaint to state a claim against it as an aider and abettor. Since we have already held that Lowenschuss has given sufficient notice to permit him to pursue his Williams Act claims in the present action, subject to dismissal if he should fail to satisfy the particularity requirements of Rule 9(b), the latter argument must be rejected. As to the former, Kidder, Peabody relies upon a footnote in Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 373 n.27 (2d Cir.), cert. denied, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973), which indicates that an investment banker merely providing services to a defendant but not involved in the decisions that led to the securities laws violations could not be held liable under § 14(e) for those violations.
 
 
 20
 Assuming this to be the rule, Kidder, Peabody cannot take advantage of it at this point in the litigation. Although there was no showing that Kidder, Peabody knew or had reason to know of any infraction, its involvement in the tender offer was never the subject of a hearing, was never raised in conjunction with any summary judgment motion and was never explained or denied in any affidavits. The only "evidence" on the issue is the assertion in its own brief (unsupported by affidavits) and in Judge Duffy's statement in the original preliminary injunction proceeding (to which plaintiffs were not parties) that there was no showing that Kidder, Peabody had acted as anything but a stockbroker for G & W. Neither this court nor the district court can resolve this factual issue, i.e., the nature and extent of Kidder, Peabody's involvement, by summary judgment upon such a meagre and conflicting record. In addition, as explained above, plaintiff has had no reasonable opportunity to present proof as to Kidder, Peabody's involvement because there was never a contention that its non-involvement was undisputed. Kidder, Peabody cannot, therefore, be dismissed from the action at this time.
 
 CONTRACT CLAIM
 
 21
 Turning to the complaint, plaintiff's most clearly defined claim is that G & W's tender offer was a unilateral offer which the class members accepted by tendering their shares, thus creating a binding contract requiring G & W to purchase the tendered shares under the terms of the tender offer. This contract was allegedly breached by G & W when it failed to purchase the properly tendered shares, thereby damaging the plaintiff class.
 
 
 22
 The tender offer reveals significant support for this position. The offer was in firm and specific written terms, beginning with the unambiguous statement that G & W "hereby offers to purchase 3,750,000 shares of Common Stock" of A & P. There was no requirement that a minimum number of shares be tendered before the obligation to purchase would be triggered nor were there any other terms which would relieve G & W of this obligation upon the occurrence or non-occurrence of any event. The only possible modification of G & W's obligation to purchase was a clause which required that G & W purchase shares on a pro rata basis if more than 3,750,000 were tendered by February 13, 1973. There is no evidence that this clause ever became applicable. In addition, the offer specifically stated that delivery of the Letter of Tender to the Depositary would create an agreement between G & W and the tenderor under the terms of the offer.[7] There was no requirement that the tender be accepted by G & W and we cannot imply one. Finally, the offer stated that all shares tendered by February 13, 1973, would be accepted, making the offer irrevocable until that date, see N.Y. General Obligations Law, § 5-1109, McKinney's Consol.Laws, c. 24-A.
 
 
 23
 The view that these events gave rise to a binding contract is supported by respected authority.[8] Williston recites the rule as follows:
 
 
 24
 "The terms of the offer generally state that holders of a specified number of shares, or a stated percentage of the stock outstanding, shall agree, before a set date, to sell their stock to the purchaser for a certain price. Acceptance by the owners of the requisite number of shares, in accordance with the terms of the offer, is the condition which must happen before the duty of payment, i.e., of immediate performance, arises. Upon the fulfillment of the condition, however, the contract is binding and enforceable."
 
 
 25
 8 Williston on Contracts § 948C, at 152 (3d ed. 1964) (footnote omitted) (emphasis added); see R. E. Crummer & Co. v. Nuveen, 147 F.2d 3, 5-6 (7th Cir. 1945); Levenburg v. Merrill, Lynch, Pierce, Fenner & Beane, 334 Mich. 508, 54 N.W.2d 626 (1952). There having been no condition that a minimum number or percentage of shares must be tendered, a binding and enforceable contract arose simply upon tender. Accordingly we find that a binding contract between G & W and the tenderor under the terms of the tender offer was created upon proper tender.[9]
 
 
 26
 Lacking a "litigation-out" clause, G & W, in an effort to avoid the contracts that resulted from the tenders, advances several legal theories for excusing it from performance. First, invoking the doctrine of impossibility, it argues that affirmance of the preliminary injunction made performance of the offer impossible as a practical matter. The district court accepted this argument, finding that the impossibility attributable to the injunction was not caused by G & W.
 
 
 27
 We agree that the preliminary injunction affirmed by this court probably rendered performance by G & W impossible for all practical purposes. Such an injunction is not in a formal sense final. However, in view of the large amount of time and money usually required to attack it and the consequent tie-up of the offeror's capital, such an attack generally may be viewed as an impractical venture. Thus, we are prepared for present purposes to hold that these circumstances give rise to "impossibility" as that term is defined in the Restatement of Contracts § 454 (1932), which includes "impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved."
 
 
 28
 G & W's "defense" of impossibility should not necessarily be sustained at this stage in the proceedings, however. Impossibility caused by a judicial order prohibiting performance will excuse a party's performance only if the fault of the party owing performance did not contribute to the order. See Kama Rippa Music, Inc. v. Schekeryk, 510 F.2d 837, 842-43 (2d Cir. 1975); Seedman v. Friedman, 132 F.2d 290, 296-97 (2d Cir. 1942); Frenchman & Sweet, Inc. v. Philco Discount Corp., 21 A.D.2d 180, 249 N.Y.S.2d 611 (1964); Restatement of Contracts §§ 457 & 458 (1932); 10 N.Y. Jurisprudence § 373, at 362 (1960). Here plaintiff contends that the injunction resulted from defendants' own conduct. Resolution of the defense of impossibility requires an examination into the conduct of the party pleading the defense in order to determine the presence or absence of such fault. In all but the clearest cases this will involve issues of fact that must be resolved by the district court only after the parties have had adequate opportunity to investigate and present their evidence.
 
 
 29
 The present record reveals that the district court improperly resolved or ignored genuine issues of material fact in finding that G & W's fault did not contribute to the issuance of the preliminary injunction. The court found that the possible antitrust violation, which was one reason for the preliminary injunction, could not be attributed to any party's fault, but was simply "the result of the juxtaposition of facts which were not intentionally incurred by defendants." This ignores the real issues as to fault. Although G & W cannot be blamed for the mere existence of facts which would prevent consummation of the tender offer, it may be blamed for making the tender offer with knowledge of facts that would entitle the target company to injunctive relief on antitrust grounds. In that event knowledge of its vulnerability to injunctive relief would bar G & W from later pleading the resulting injunction as an impossibility defense. The issue of G & W's knowledge in the present case is therefore one of material fact precluding summary judgment. See, e.g., Harwell v. Growth Programs, Inc., 451 F.2d 240, 245 (5th Cir. 1971), cert. denied, 409 U.S. 876, 93 S.Ct. 126, 34 L.Ed.2d 129 (1972).
 
 
 30
 Similarly, since the injunction was grounded in part upon G & W's failure to disclose its intention to acquire dominance over A & P and its failure to disclose its holdings in other companies which would have indicated that G & W's acquisition of A & P stock was likely to result in antitrust violations, proof that G & W knew of these undisclosed facts would preclude its availing itself of the injunction as an impossibility defense.
 
 
 31
 The same principles govern G & W's possible interposition of a defense, alluded to by the parties in their briefs, that the tender offer contract was illegal. Under the doctrine of illegality a party to an unlawful bargain cannot recover damages for its breach. Restatement of Contracts § 598 (1932). Where the illegality of the bargain, however, arises from facts which are known to one party but are justifiably unknown to the other, an important exception to the rule holds that illegality will not bar a suit by the ignorant party for damages for breach. Restatement of Contracts § 599 (1932). Assuming that the bargain here was rendered illegal by reason of facts known to G & W (e.g., the likelihood of antitrust violations) but not reasonably expected to be known to plaintiff, G & W would not be excused from performance by reason of illegality.
 
 
 32
 To resolve the issues of impossibility and illegality, plaintiff is entitled to his day in court. It was error for the district court to hold that plaintiff's mere knowledge of the institution of litigation before tender amounted to knowledge of the actual facts causing impossibility or illegality, thus estopping plaintiff from contesting those affirmative defenses. There is no evidence that plaintiff had knowledge of the actual facts underlying the litigation. Indeed, some members of the plaintiff class such as Mrs. Carpenter, intervenor here, might not even have had knowledge of the institution of litigation. On the contrary A & P stockholders were advised by G & W that there was no factual support for the entry of an injunction. G & W can hardly claim now that they should have disbelieved its representation and assumed the worst to be true. Absent any specific knowledge of G & W affairs and intentions, A & P stockholders were entitled to rely upon G & W's representations and therefore cannot be said to have had any knowledge of facts giving rise to either illegality or impossibility before their irrevocable tender of A & P shares.
 
 
 33
 G & W, relying principally upon our language in Pepsico, Inc. v. FTC,472 F.2d 179, 187-90 (2d Cir. 1972), cert. denied, 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973), argues that, since the finding of illegality of the tender offer contract was grounded on federal policies underlying the antitrust laws, public interest considerations should preclude enforcement of the contract by plaintiff through recovery of damages. In Pepsico we indicated that a court should not enforce a contract where performance has been enjoined by a federal administrative agency on antitrust grounds as to some but not all parties. This represented no more than a federal variant of the doctrine of impossibility which is necessarily dependent in its operation, in the federal sphere as elsewhere, upon equitable considerations, such as fault. Indeed Judge Clark specifically noted that the "contractual duty is discharged, in the absence of circumstances showing . . . contributing fault on the part of the person subject to the duty, where performance is subsequently prohibited by an administrative order . . . ." L. N. Jackson & Co. v. Royal Norwegian Government, 177 F.2d 694, 697 (2d Cir. 1949), cert. denied, 339 U.S. 914, 70 S.Ct. 574, 94 L.Ed. 1340 (1950); see, e.g., Texas Co. v. Hograth Shipping Co., 256 U.S. 619, 41 S.Ct. 612, 65 L.Ed. 1123 (1921); New York Trust Co. v. SEC, 131 F.2d 274 (2d Cir. 1942), cert. denied, 318 U.S. 786, 63 S.Ct. 981, 87 L.Ed. 1153 (1943).
 
 
 34
 The district court also based its grant of summary judgment to the defendants on the ground that the plaintiff class suffered "no damage cognizable at law." However, the court's reasoning with respect to the absence of damage, at least insofar as it pertains to plaintiff's suit for breach of contract, is unclear. At one point Judge Duffy asserted that the tendering stockholders did not suffer loss of use of their shares, which would be a relevant criterion for measuring Williams Act damages, but not those attributable to breach of contract. At another point he asserted, erroneously in our view, that we rejected the contention that G & W should be required to make any payment for the tendered shares in our G & W v. A & P opinion. Our decision there merely held that the tendering shareholders had no right to consummate an illegal tender offer. We were not called upon to decide whether damages might be awarded for breach of the tender offer contract. That problem was left for another day, which now seems to have arrived.
 
 
 35
 While we cannot finally decide the issue of damages at this time because of the dearth of relevant facts, it appears that for breach of contract the damages recoverable would be the normal measure, i.e., "the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages . . . ." N.Y. Uniform Commercial Code § 2-708(1), McKinney's Consol.Laws, c. 38.
 
 WILLIAMS ACT CLAIM
 
 36
 Since the district court's dismissal of the complaint must, in view of the sufficiency of its claim for breach of contract, be reversed and leave to amend should be granted for the purpose of stating plaintiff's claim for violation of § 14(e) of the Williams Act, we need not linger long over defendants' contention that plaintiff could not in any event state a valid Williams Act claim.
 
 
 37
 The essence of plaintiff's claim as described in the briefs is that G & W and Bluhdorn omitted material facts from the tender offer which defendants knew or should have known were necessary to make it not misleading namely (1) G & W's intention to acquire a controlling position in A & P or at least to exercise influence over A & P's management and policies, and (2) G & W's holdings in other companies, which rendered it likely that its acquisition of A & P stock would result in violation of the antitrust laws by both companies, see 476 F.2d at 695. Plaintiff further claims that Kidder, Peabody aided and abetted these omissions and "warranted" to the general public that G & W's actions were legal and proper.
 
 
 38
 As tendering stockholders the class members have standing to sue under the Williams Act, see, e.g., Electronic Specialty Co. v. International Controls Corp., 295 F.Supp. 1063, 1071-72 (S.D.N.Y.1968), aff'd in part, rev'd in part on other grounds, 409 F.2d 937 (2d Cir. 1969). Section 14(e) was designed to insure full and fair disclosure by the offeror to public shareholders, see Chris-Craft Industries, Inc. v. Piper Aircraft Corp., supra, 480 F.2d at 358; Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 945 (2d Cir. 1969). Of course mere allegation or proof of omissions from G & W's tender offer statement will not state a claim under § 14(e); plaintiff must establish culpability on the part of the defendants, see Chris-Craft Industries, Inc. v. Piper Aircraft Corp., supra, 480 F.2d at 362-64,[10] and the materiality of the alleged omissions, see id., 480 F.2d at 362-63; SEC v. Texas Gulf Sulphur Co.,401 F.2d 833, 849 (2d Cir. 1968) (en banc), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); cf. Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 353 F.Supp. 264, 272-73 (S.D.N.Y.1972), aff'd, 495 F.2d 228 (2d Cir. 1974). The intention to exercise control over a target company and the knowledge of antitrust violations that might result from acquisition of the tendered stock are normally both matters of importance to prospective tenderors, see 476 F.2d at 696 n.16 & 697. In addition plaintiff must be prepared to allege and prove causation, see Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).[11]
 
 
 39
 Finally plaintiff must be able to show that the tenderor class was damaged as a result of the Williams Act violations. Defendants contend that on this issue alone dismissal is mandated by our decision in Levine v. Seilon, Inc., 439 F.2d 328, 333-34 (2d Cir. 1971), which held that damages for fraud are not recoverable under Rule 10b-5 when the only loss suffered by the plaintiff is the opportunity to sell to others at high prices induced by defendant's fraud. Plaintiff here would certainly not be entitled to profits which would capitalize upon defendants' alleged fraud. However, plaintiff seeks damages of a different sort, i.e., losses attributable to the tenderors' inability to sell their shares in the declining market that followed the district court's issuance of its preliminary injunction and decision that gave notice to all shareholders of the probable omissions of material fact from the tender offer. Assuming that some shareholders purchased in the open market and tendered on the basis of G & W's tender offer, their shares were tied up during the declining market until G & W released them on March 14. Since sales during this period, had such tenderors been free to sell, would have been made to persons who had been advised of the alleged G & W omissions, the sellers would not have been taking advantage of G & W's fraud (which was the evil condemned in Levine v. Seilon, Inc.). However, because of their inability to sell in a declining market the tenderors, having tendered in reliance upon G & W's omissions, would have suffered damages as victims rather than as coat-tail riders.
 
 
 40
 All of this does not mean that plaintiff, should he prevail, could simply recover the difference between the market price of A & P shares on the first day the shares could have been withdrawn from tender and the highest market price in the period during which they were tied up. Damages cannot be based upon mere speculation or guesswork. PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 417 F.2d 659, 663 (9th Cir. 1969), cert. denied, 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 99 (1970); James Wood General Trading Establishment v. Coe, 297 F.2d 651, 658 (2d Cir. 1961). To recover anything the class members must assume the burden of proving with reasonable certainty, see W. L. Hailey & Co. v. Niagara County, 388 F.2d 746, 753 (2d Cir. 1967), that they would have sold their shares at a particular price or time if the shares had not been frozen.
 
 OTHER CLAIMS
 
 41
 We find appellants' other claims to lack merit. Damages for the period after plaintiff's shares were released and after plaintiff had knowledge of the alleged omissions from the tender offer as a result of this court's affirmance of the injunction are not recoverable. Once the shares were released by G & W, plaintiff was free to sell at any time in the market. He cannot recover losses suffered as a result of his retention of his shares in the hope that the tender offer would eventually be consummated.
 
 
 42
 In view of the existence of the several disputed issues of material fact noted above, plaintiff's argument that summary judgment should have been granted in his favor is meritless. Additionally having reviewed the record, we are satisfied that Lowenschuss' complaint of bias on the part of the district judge is wholly lacking in substance.
 
 
 43
 For the foregoing reasons the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 15 U.S.C. § 78n(e) provides:
 "It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative."
 
 
 [2]
 Mr. Lowenschuss is an attorney actively engaged in law practice in Philadelphia, Pennsylvania, with the firm Fred Lowenschuss Associates. The firm has established a trust known as Fred Lowenschuss Associates Pension Plan to provide pension benefits for employees of the firm and Mr. Lowenschuss is the sole trustee of that trust. Mr. Lowenschuss is suing in his capacity as trustee of the pension fund
 
 
 [3]
 A "litigation-out" clause is a provision commonly included in the terms of a tender offer which relieves the offeror of any obligation to purchase or pay for any of the tendered shares if, before the time of payment therefor, litigation relating to the offer shall have been instituted or threatened before any court or governmental agency by any governmental agency or person. Another provision usually included in a tender offer but also not included in G & W's offer is one relieving the offeror of the obligation to purchase tendered shares upon the occurrence of other adverse events which cannot be foreseen or controlled, such as a drastic change in the target company's business, a national emergency or a physical disaster. See Aranow & Einhorn, Tender Offers for Corporate Control 53 (1973)
 
 
 [4]
 The antitrust problems arose from two different factors. First, G & W is a large conglomerate with substantial business interests in several areas of food processing and distributing. It was proved by A & P that a reasonably likely result of the acquisition would be the development of vertical reciprocal dealing between present G & W subsidiaries in the food industry and A & P itself or A & P suppliers, with resultant foreclosure of the A & P market (a significant one since A & P is one of the country's largest food retailers) to non-G & W food processors and distributors. The danger of this market foreclosure was found to exist whether or not G & W actually exercised control over A & P because A & P suppliers might independently determine that it would be in their best interest to purchase whenever possible from G & W subsidiaries
 Second, the chief operating officer of G & W, C. G. Bluhdorn, was the largest single shareholder of the Bohack Corporation, one of A & P's major competitors in the New York City area, in the period immediately preceding the tender offer. Although Bluhdorn's shares were placed in a trust on February 1, 1973, to be sold within one year after the expiration date of the tender offer if the offer were consummated, A & P alleged that Bluhdorn's relationship with Bohack would cause horizontal market foreclosure and price-fixing between A & P and Bohack. While we did not specifically find a probability of success on this antitrust claim, it is clear from our opinion that this claim was not considered insubstantial as we found that G & W should have disclosed this circumstance and its antitrust implications in the tender offer. 476 F.2d at 693-97.
 
 
 [5]
 The class in the present action is defined as all A & P shareholders who tendered their shares to G & W. The class sought to be represented in the second action includes all persons or entities who purchased shares of common stock of A & P between February 1, 1973, and March 13, 1973, inclusive, up to the time when trading in the common shares of A & P on the New York Stock Exchange was suspended. It is obvious that while many persons may be members of both classes, a large number of persons will be in one and not the other
 
 
 [6]
 Judge Duffy's construction of the pleadings was influenced by certain representations contained in the complaint filed in the second Lowenschuss action to the effect that it was the only action between the parties stemming from the misrepresentations and omissions in the tender offer. That complaint characterizes the instant action as one to enforce consummation of the tender offer. See PP 18 & 32 of the complaint in 73 Civ. 2931, Southern District of New York. While such representations would certainly be important in determining the scope of the complaint if the two actions were brought on behalf of the same class, we cannot allow them to deny the adjudication of claims to members of a different class when their complaint does encompass the disputed cause of action
 
 
 [7]
 The fourth subparagraph of paragraph 4 of the published offer provided:
 "The delivery of the Letter of Tender and the acceptance of this Offer will constitute an agreement between the tendering stockholder and G & W in accordance with the terms of this Offer, only when the duly signed Letter of Tender, or a telegram or letter (as provided above) from a member of a national securities exchange or the National Association of Securities Dealers, Inc. or a bank or trust company in the United States, is received by the Depositary."
 
 
 [8]
 We do not find it necessary to determine whether New York law or, as defendants suggest, federal law applies on this issue. Our research has not revealed any decisions or statutes addressing this problem in either jurisdiction. Accordingly, we will apply the rule developed in other jurisdictions, which appears to be reasonable
 
 
 [9]
 The suggestion by the district court that a tender offer is simply an "offer for an offer," see 367 F.Supp. at 914 n.4, seems to be based upon a misreading of Williston. The section quoted in support, 1 Williston on Contracts § 31, at 82 (3d ed. 1957), deals with advertisements for competitive bids to purchase goods or provide services. That is clearly a different situation from a tender offer, as competitive bidding is more in the nature of an auction sale where bid prices are solicited and only one or a few of the bids tendered can be accepted. Here, on the other hand, G & W did not seek bids for prices for A & P shares but offered to purchase up to 3,750,000 shares at a set price on stated, non-negotiable terms
 
 
 [10]
 Although it is clear that some showing of culpability is necessary to find a defendant liable either as a principal or as an aider and abettor under § 14(e) the operative definition of culpability is unsettled. The standard with regard to a principal has been variously described as "recklessness that is equivalent to wilful fraud," Chris-Craft Industries, Inc. v. Piper Aircraft Corp., supra, 480 F.2d at 393 (Gurfein, D. J., concurring), and as failure to disclose known essential facts or failure, after being put on notice, to discover material facts which could reasonably have been ascertained and disclosed without extraordinary effort, Chris-Craft, supra, 480 F.2d at 398 (Mansfield, C. J., concurring and dissenting). See also Chris-Craft, supra, 480 F.2d at 363 (Timbers, C. J. ). Similarly, an aider and abettor will be held liable if he assisted the principal with knowledge of material falsity or was reckless in determining the existence of material falsity in a registration statement, see Chris-Craft, supra, 480 F.2d at 370, or if he "knowingly and substantially assisted the violation," SEC v. Coffey, 493 F.2d 1304, 1316 (6th Cir. 1974)
 There is no need at this time for us to engage in detailed analysis of these standards or to determine which, if any, should be applied here. In this evaluation of plaintiff's cause of action we need only observe that some allegation of facts implying knowledge or reckless disregard is necessary and that a mere negligence standard cannot be used. The actual contours of the standards can be developed later when the nature of defendants' knowledge, or lack thereof, becomes clear.
 
 
 [11]
 Here again, the character of the proof necessary to make out a violation is in dispute. Compare Judge Timbers' formulation in Chris-Craft Industries, Inc. v. Piper Aircraft Corp., supra, 480 F.2d at 373-77 (proof of materiality provides only a presumption of reasonable reliance sufficient to establish causation) with that of Judge Mansfield, 480 F.2d at 399-400 (concurring and dissenting) (proof of materiality establishes reasonable reliance and causation as a matter of law). See also Schlick v. Penn-Dixie Cement Corp., supra, 507 F.2d at 380-81; Note, The Reliance Requirement in Private Actions Under SEC Rule 10b-5, 88 Harv.L.Rev. 584, 597-606 (1975)