In re JAMESON'S FOODS, INC. d/b/a Jameson's Red & White, Debtor,

Kevin CAMPBELL, Trustee, Plaintiff,

v.

The SMALL BUSINESS ADMINISTRATION and South Carolina National Bank, Defendants.

Bankruptcy No. 81–01306.
Complaint No. 82–0039.

United States Bankruptcy Court, D. South Carolina.

March 21, 1983.

H. Flynn Griffin, Walterboro, S.C., for plaintiff.

Lincoln C. Jenkins, III, Asst. U.S. Atty., Columbia, S.C., for defendant SBA.

Stanley H. McGuffin, S.C. National Bank Law Dept., Columbia, S.C., for defendant bank.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

In this adversary proceeding the trustee seeks to set aside, under 11 U.S.C.[1] 547(b)[2] of the Bankruptcy Code of 1978, an alleged preferential transfer.

---

1. Further reference to sections of the 1978 Code will omit the identically numbered section of Title 11, United States Code.

2. Section 547(b): Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; or

## FACTS

On June 30, 1980 the defendant, South Carolina National Bank (SCN), loaned the debtor, Jameson's Foods, Inc. d/b/a Jameson's Red & White (Jameson's), $587,500 of which the defendant, Small Business Administration (SBA), guaranteed repayment of $500,000 plus interest—approximately 85.11% of the loan. Contemporaneously, Jameson's gave SCN a promissory note (the note) and a security interest (the security interest) in several items, including Jameson's inventory, fixtures and the proceeds thereof.

Jameson's never made any payments on the loan. By letter, dated May 5, 1981, SCN requested SBA to indemnify it under the guarantee agreement. On May 6, 1981 SBA, by letter, requested SCN to assign the promissory note to SBA; SCN complied on May 12, 1981. On May 15, 1981 SBA requested, among other things, that SCN also assign the security interest to SBA. SCN made the assignment on May 18, 1981. On May 27, 1981 SBA gave SCN a certificate of the interest indicating that SCN had an interest in the loan to the extent that SCN was not idemnified. In effect SBA agreed to return to SCN 14.89% of whatever SBA collected.

On July 4, 1981, when Jameson's ceased doing business, there were $29,547.52 (on deposit) in its SCN checking account. That account was Jameson's only checking account; it was used for general business purposes. On July 8, 1981 SCN, without authorization from Jameson's, transferred these funds to SBA to be applied to the note. On September 8, 1981—less than ninety days after that transfer—Jameson's filed a voluntary petition for relief under

Chapter 7 of the Bankruptcy Code (§ 701 *et seq.*).

On October 2, 1981 SBA returned $4,298.31 to SCN pursuant to the agreement to give SCN 14.89% of whatever SBA collected on the debt.

During the ten days immediately prior to filing its petition for relief under Chapter 7, Jameson's made no deposits into the checking account.

## DISCUSSION AND CONCLUSION

### I

The defendants allege that the funds are not property of the bankruptcy estate subject to administration by the trustee because the funds were repossessed prior to the filing of the debtor's petition for relief. As authority, they cite *Cross Electric Co. v. United States,* 664 F.2d 1218 (4th Cir.1981); *Lexington State Bank v. Miller,* (*18 Wheeler Truck Stop, Inc.*) Case No. 82–01124, Complaint No. 82–0845 and 82–0829 (Bkrtcy. D.S.C.1982); *Snyder v. Commercial Credit Corp.,* Case No. 82–00099, Complaint No. 82–0144 (Bkrtcy.D.S.C.1982); and *Campbell v. General Motors Acceptance Corp.,* 20 B.R. 42 (Bkrtcy.D.S.C.1982). None of the cited cases addressed the issue of whether property became "property of the estate" upon recovery through the trustee's avoiding powers.

If a transfer is avoided under § 544, 545, 547, 548, 549 or 724(a), the property transferred may be recovered by the trustee, under certain circumstances, for the estate pursuant to § 550(a); and the property—recovered under § 550(a)—becomes "property of the estate" pursuant to § 541(a)(3).[3] See 4 *Collier on Bankruptcy* para. 541.16 at 541.72.10 (15th ed. 1979).

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
(i) was an insider; and
(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

3. Section 541: (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located; . . .

■ There is no requirement that the property which the trustee seeks to recover through § 550 (using the trustee's avoiding powers) be "property of the estate" as required when the trustee proceeds pursuant to § 542(a) [4], as the debtor-in-possession did in *Cross Electric.* Property recovered under § 550 by a trustee through the avoidance of a transfer becomes "property of the estate" under § 541(a)(3) even if the property was not initially "property of the estate". *McCauley v. LeVaine,* Case No. 82–00856, Complaint No. 82–0803 (Bankr.D.S.C. 1983); Notice of Intent to Appeal filed. *Cross Electric, 18 Wheeler Truck Stop, Snyder,* and *Campbell* do not require a different conclusion.

Therefore, if the funds in question are recovered pursuant to § 547(b) and § 550(a), they become "property of the estate"; thus this court must determine whether the transfer of the funds is a voidable preference under § 547(b) and the funds are transferrable under § 550(a).

## II

The primary thrust of the trustee's complaint being the avoidance of the transfer under § 547(b), the trustee has the burden of showing that the transfer comports with each element of § 547(b). His initial hurdle is the § 547(b) requirement that there be a "transfer of property of the debtor".

"Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest.

Section 101(40).

■ The defendants have taken the position that SCN, pursuant to § 553, was entitled to set off the funds in its possession.[5] That position is untenable for at least two reasons: (1) because SCN assigned the note and security interest several weeks before the transfer occurred, there was no mutuality of debt as required by § 553(a) for set off, see 4 *Collier on Bankruptcy* para. 553.04 (15th ed. 1979), and (2) the money which was transferred was not applied directly to a debt owed to SCN; it was sent to SBA. Thus the transaction complained of by the trustee is not a set off but a "transfer of property of the debtor" within the meaning of § 547(b) and § 101(40).

### Section 547(b)(1)

SBA—the party for whose benefit the transfer was made, as the assignee of the promissory note and security interest and the guarantor of the debt—was a creditor of the debtor at the time the transfer was made. The requirement of § 547(b)(1) is met.

### Section 547(b)(2)

The transfer was on account of the loan which was made to Jameson's on June 30, 1980, slightly more than a year before the transfer occurred. It is, therefore, plain that the transfer was on account of an antecedent debt owed by the debtor before the transfer was made as required by § 547(b)(2).

### Section. 547(b)(3)

■ The trustee, pursuant to § 547(b)(3), must show that the debtor was insolvent when the transfer was made. The trustee is aided by the presumption of insolvency

(3) Any interest in property that the trustee recovers under section 543, 550, 553, or 723 of this title.

4. Section 542(a): Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

5. The legislative history of § 101(40) indicates the lack of a legislative consensus as to whether a set off constitutes a transfer within the meaning of § 101(40).

provided by § 547(f).[6] Since the defendants offered no evidence to rebut this presumption, the burden of proof imposed on the trustee by § 547(b)(3) has been met.

### Section 547(b)(4)

Section 547(b)(4)(A) says that the transfer to be avoided must have been made within ninety days of the filing of the petition. On July 8, 1981, the funds were taken by SCN and transferred to SBA. Jameson's filed its petition two months later, on September 8, 1981. Therefore, the transfer was within ninety days.

### Section 547(b)(5)

To meet the mandate of § 547(b)(5), the trustee must show that SBA improved its position as a result of the transfer.

> 11 U.S.C. § 547(b)(5), by its terms, does not require consideration of what the transferee would have received in a Chapter 7 liquidation had that liquidation occurred at the time of the transfer; rather, it contemplates what the transferee would receive in a Chapter 7 liquidation if the transfer had not been made and the Chapter 7 case ensued at the time that the case at bar actually ensued. This too is consistent with 1898 Act case law; for the Supreme Court stated, under the 1898 Act, that whether a creditor has received a preference is to be determined not by what situation would have existed if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of payment as determined when bankruptcy results.

9A Am.Jur.2d., *Bankruptcy* § 549 (1980), citing *Palmer Clay Products Company v. Brown,* 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936); *Bronx Brass Foundry Inc. v. Irving Trust Company,* 297 U.S. 230, 56 S.Ct. 451, 80 L.Ed. 657 (1936); and *Canright v. General Finance Corp.,* 123 F.2d 98 (7th Cir.1941).

6. Section 547(f): For the purposes of this section, the debtor is presumed to have been insol-

### Security Interest

The fact that SBA may have had a security interest in the checking account at the time of the transfer does not entitle it to prevail. The criterion is whether SBA would have had a security interest in the funds *at the time the petition for relief was filed* if the transfer had not been made.

SBA maintains that it had a security interest in inventory, fixtures, and the proceeds thereof at the time of the transfer.

It has been stipulated that at least a portion of the checking account could be attributed to the sale of inventory. In insolvency proceedings, the extent of a security interest in proceeds must be determined pursuant to S.C. Code § 36–9–306(4) (1976) (Section 9–306(4) of the Uniform Commercial Code) which states:

> In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest... (d) in all cash and bank accounts of the debtor, if other cash proceeds have been commingled or deposited in a bank account, but the perfected security interest under this paragraph (d) is (i) subject to any right of setoff; and (ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of insolvency proceedings and commingled or deposited in a bank account prior to the insolvency proceedings less the amount of cash proceeds received by the debtor and paid over to the secured party during the ten day period.

It is undisputed that the checking account which SCN appropriated contained cash in which SBA did not have a security interest. The checking account was Jameson's only checking account and was used for general business purposes. Jameson's included sales taxes in every deposit made into the account. SBA concedes that it has no se-

vent on and during the 90 days immediately preceding the date of the filing of the petition.

curity interest in the sales taxes which were collected.

■ It was stipulated that Jameson's closed its doors permanently on July 4, 1981, that no cash proceeds were received by the debtor within ten days before the institution of insolvency proceedings, and that no deposits were made during those ten days; therefore, no proceeds were "commingled or deposited in a bank account prior to the insolvency proceedings . . . ." S.C.Code § 36–9–306(4)(d)(ii) (1976). Since the perfected security interest given by section 36–9–306(4)(d)(ii) is "limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings" and no cash proceeds were received or deposited by the debtor during this ten day period, SBA would have had no security interest in the checking account at the time of filing if the transfer had not been made.

The facts here are similar to those in *Cooper v. First International Bank of Houston,* 2 B.R. 188, 28 U.C.C.Rep. 176 (Bkrtcy.S. D.Tex.1980). In *Cooper* the bank had a perfected security interest in cash proceeds which were deposited into a general, commingled bank account on September 7, 1976. No other proceeds were deposited into the account, and on September 24, 1976 the debtor filed a voluntary petition for relief under Chapter XI of the Bankruptcy Act. The Bankruptcy Court, holding that the defendant had no security interest in the commingled bank account, stated,

First International as the holder of a perfected security interest in cash proceeds, was entitled to any cash proceeds received by the debtor, Cooper, within the ten days preceding the filing. The last deposits of 'cash proceeds' by Mr. Cooper were made on September 7, 1976; he did not, however, file a Chapter XI proceeding until September 24, 1976, more than ten days later. Therefore, although First International holds a perfected security interest in all the cash proceeds received from the onsite ticket sales, the operation of section 9.306(d)(4)(B) precludes First

International from reaching any of the funds.

*Id.* at 196, 28 U.C.C.Rep. 185–186.

The Court added:

Once, however, those cash proceeds are deposited in a general deposit account, section 9.306(d)(4)(B) sets out a formulation to determine the secured creditor's interest in the commingled account. This formula is apparently in lieu of the right to trace and limits any right the secured creditor would have had in non-code situations to trace proceeds by any means available.

*Id.* at 196, 28 U.C.C.Rep. 184.

If the transfer had not occurred, section 9–306, as interpreted in *Cooper,* would require that the entire fund be turned over to the trustee without regard to the defendant's right to trace.

### TRACING

SBA takes the position that it should be allowed to trace the proceeds of its collateral into the debtor's checking account pursuant to S.C.Code § 36–9–306(2) (1976) which provides:

*Except where this chapter otherwise provides,* a security interest continues in the collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(Emphasis added.)

Because subsection (4) of 9–306 states the law which must be followed in insolvency proceedings, subsection (2) does not apply here.

■ Section 9–306(4) eliminates the common law doctrine of tracing. In Kaye, *Preferences Under the New Bankruptcy Code,* 54 Am.Bankr.L.J. 197, 212 (Summer 1980) the author stated,

The idea behind this (4)(d) interest was to eliminate the imprecise and time consuming tracing creditors used to have to resort to with an insolvent debtor, and

granted instead a security interest of readily definable magnitude that would roughly approximate, or more often fall short of, what the creditor would have had with the aid of a tracing rule.

A similar view is expressed in J. White and R. Summers, *Uniform Commercial Code,* pg. 1013, (2d ed. 1980):

> The sub-section is a descendant of and a substitute for the common law tracing rules that might have applied in some states. In theory the secured creditor gives up the common law rights such as 'the lowest intermediate balance rule' in return for the claim he receives under sub-section (d).

Section 9–306, Official Comment, 2(a) is that:

> The change in existing law made by this Section relates to non-identifiable cash proceeds; the secured party has, under conditions stated in sub-section (4)(d), a security interest in the debtor's cash and bank accounts equal to the amount of cash proceeds received and commingled or deposited within the ten days before insolvency proceedings were instituted, less the amount of cash proceeds received by the debtor and paid over to the secured party during that period, *without regard to whether or not the funds are identifiable as cash proceeds of this collateral.*

(Emphasis added.)

Skilton, *The Secured Party's Rights in a Debtor's Bank Account,* 60 Southern Illinois Univ.Law J. 60, 65 (1978) states that:

> Where it applies, section 9–306(4)(d) provides the exclusive recourse. Thus, even if the secured party may trace cash proceeds received by the debtor from the disposition of collateral covered by a perfected security interest into the debtor's bank account, the secured party has no effective claim to receipts prior to ten days of the institution of insolvency proceedings, . . .

There are several reasons why the state legislatures and the drafters of the Uniform Commercial Code eliminated the common law doctrine of tracing in bankruptcy situations. One substantial consideration is the problem of proof. Once proceeds have been deposited into a commingled account, it is impossible to separate proceeds from other funds. The principal draftsman of Article 9, Grant Gilmore, took the position that proceeds cease to be identifiable when commingled in a bank account. 2 Gilmore, *Security Interests in Personal Property,* 735–36 (1965). Using any one of the common law tracing formulae could result in secured creditors' having a security interest in proceeds which in total exceed the amount of the account. Most tracing formulae involve the presumption that the funds being traced tend to stay in the account once they have been deposited. If there are several creditors attempting to trace, mathematical difficulties may result. The dispute currently before the Court graphically illustrates the awkwardness of tracing funds. The funds taken by SCN and transferred to SBA were those funds in Jameson's general checking account. That checking account contained sales taxes which had been collected, withholding taxes which had been withheld from employees' pay checks, operating capital, and the proceeds of a key manufacturing machine. Had it been necessary to trace proceeds it would have been very difficult to determine exactly which deposits could be attributed to items not covered by SBA's security interest.

In tracing, the presumption that the proceeds remain in the checking account is inconsistent with the actual intentions of the parties in this case. SBA knew that proceeds of its collateral were being used to pay operating expenses. During the final month in which it was in business, Jameson's ceased paying its operating expenses—this resulted in the ballooning of the checking account. Because unsecured creditors, who were not paid, have an equitable interest in the funds in the checking account, it would be unfair to allow the secured creditor to improve its position so drastically during the debtor's slide into bankruptcy.

In sum, SBA has improved substantially its position during the ninety days

immediately preceding Jameson's filing of its petition for relief in bankruptcy. The transfer of $29,547.52 to SBA enabled it to receive more than it would have received if the transfer had not been made and payment was made to SBA by way of a distribution under Chapter 7.

SBA's argument that it is entitled to a security interest in funds that it can trace must fail because of the clear edict of S.C. Code § 36–9–306(4)(d) (1976).

## III

The liability of the defendants as transferees of an avoided transfer is determined under § 550.

■ Because SCN previously had assigned the note to SBA, the money which SCN took was not taken for its benefit but was taken for the benefit of SBA and transferred to SBA. Therefore, under § 550(a)(1) [7], the trustee may recover from SBA, the initial transferee and the entity for whose benefit the transfer was made, $29,547.52 which is the amount transferred by SCN from Jameson's account to SBA.

The trustee's right to recover from SCN, the immediate transferee of $4,298.31 from SBA, is based on § 550(a)(2) [8]. The trustee's use of § 550(a)(2), however, is restricted by § 550(b)(1) [9]. See 4 *Collier on Bankruptcy* para. 550.03 at p. 550–8 (15th ed. 1979). Since SCN received the funds in satisfaction of a debt, it is clear from the language of § 550(b)(1), it took for "value". In considering whether SCN took, "without knowledge of the voidability of the transfer

avoided" as required by § 550(b)(1), this court agrees that:

> With respect to prepetition transfers that are recoverable only if a bankruptcy petition is filed the transferee should be held to have knowledge of the avoidability of the transfer if, *inter alia,* he has reasonable cause to believe that a petition may be filed.

4 *Collier on Bankruptcy,* para. 550.03 at p. 550–9 (15th ed. 1979).

■ On the facts of this case it would not have been unreasonable for SCN to believe that Jameson's, which had already ceased doing business, would file a petition for relief under the Bankruptcy Code. Therefore, the trustee may recover from SCN $4,298.31, the amount transferred by SBA, the initial transferee, to SCN, the immediate transferee.

The trustee is entitled under § 550(c) [10] to a single satisfaction of the property recovered under § 550(a). Therefore, the trustee may only recover $29,547.52. Since SCN is liable to the trustee for $4,298.31, the amount SCN received from SBA, and SBA is liable to the trustee for $29,547.52, the amount SBA received, SBA and SCN are jointly and severally liable for $4,298.31 and SBA is solely liable for the remainder of the transfer, $25,249.21.

## ORDER

IT IS ORDERED, ADJUDGED AND DECREED that:

(1) The transfer of funds to the Small Business Administration be avoided;

---

7. Section 550(a)(1): (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from-(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made;

8. Section 550(a)(2): (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from-... (2) any immediate or mediate transferee of such initial transferee.

9. Section 550(b)(1): (b) The trustee may not recover under subsection (a)(2) of this section from-(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided;

10. Section 550(c): The trustee is entitled to only a single satisfaction under subsection (a) of this section.

(2) That Kevin Campbell, as trustee, have a judgment against the defendants, South Carolina National Bank and the Small Business Administration, in the amount of $4,298.31; and

(3) That Kevin Campbell, as trustee, have a judgment against the Small Business Administration in the amount of $25,249.21.