The **FIRST NATIONAL BANK OF AMARILLO, Appellee and Cross-Appellant,**

v.

Janet Denice **MARTIN, f/k/a Janet Baldwin, f/d/b/a Bottle, Bangles and Beads, Baubles Bangles and Beads, Janet Martin and/or Janet Baldwin; William R. Martin; and Vann Pressley, Appellants and Cross-Appellees.**

**Thomas A. Bunkley, Jr., Trustee, Intervenor, Appellant and Cross-Appellee.**

Civ. A. No. CA–2–82–119.

United States District Court, N.D. Texas, Amarillo Division.

April 4, 1985.

Larry Sherman, Gibson, Ochsner & Adkins, Amarillo, Tex., for First National Bank.

Vann D. Pressley, Amarillo, Tex., for Janet Martin.

Thomas A. Bunkley, Jr., Amarillo, Tex., for trustee.

## MEMORANDUM ORDER

MARY LOU ROBINSON, District Judge.

This is an appeal from the order of the Bankruptcy Court [1], The Honorable Bill H. Brister presiding, awarding:

1. the First National Bank of Amarillo [hereinafter the Bank] the sum of $21,062.19 with interest thereon from Janet Denice Martin [hereinafter Debtor]; and

---

1. This case is reported as *In re Martin*, 25 B.R. 25 (Bkrtcy.N.D.Tx.1982). The facts of this case are exhaustively set out therein and will not be duplicated in this opinion.

excepting such debt from discharge in bankruptcy [2];

2. the sum of $1,480.00 with interest thereon from Vann Pressley with any recovery thereof to be credited against the above $21,062.19 judgment in favor of the Bank against Debtor;

3. the sum of $5,268.79 with interest thereon which amount is located in a checking account in Debtor's name at the Texas Bank of Amarillo, from Debtor and William R. Martin, with any recovery to be credited against the above $21,-062.19 judgment in favor of the Bank against Debtor;

4. recovery of all amounts and interest in a savings account in the name of William R. Martin at West Texas State Bank of Canyon, with any recovery to be credited against the above $21,062.19 judgment in favor of the Bank against Debtor.

## ISSUES BEFORE THE COURT ON APPEAL

The Trustee in Bankruptcy, the Debtor's attorney, and the Bank filed notices of appeal with the Bankruptcy Court. However, the Debtor's attorney failed to comply with Rule 808 of the Federal Rules of Bankruptcy Procedure in that he has neither sought an extension of time to file a brief nor replied to briefs which have been filed. His appeal will be dismissed for failure to prosecute. *In re Har-Dway House Statuary, Inc.*, 76 F.R.D. 204, 205 (E.D.Mo.1977); *Jackson v. Hensley*, 484 F.2d 992 (5th Cir. 1973). The following issues remain for this Court's consideration:

I. Whether the proper application of U.C.C. § 9.306 serves to cut off First National Bank's (hereinafter Bank) security interest in the Debtor's checking account at Texas Bank of Amarillo and the savings account of Debtor's husband in the West Texas Bank of Canyon, Texas, so that the trustee would gain priori-

ty in the funds by virtue of his status as a duly perfected lien creditor.

II. Whether the sums contained in Debtor's checking account at Texas Bank of Amarillo and the savings account of Debtor's husband in West Texas Bank of Canyon are the res of a constructive trust in favor of the Bank and of which the Debtor and her husband were trustees.

III. Whether the Bankruptcy Court erred in failing to hold that the Debtor should be denied discharge in general under the language of 11 U.S.C. § 727 of the Bankruptcy Code.

IV. Finally, whether the Court erred in entering a "final judgment" which in some respects held against the Plaintiff Bank despite the fact that no other party moved for summary judgment.

## DISCUSSION

ISSUE I: *The Interpretation of U.C.C. § 9.306.*

In applying the lowest intermediate balance rule of tracing to the present cause rather than § 9.306(d)(4) of the U.C.C., the Bankruptcy Judge acted on the theory that common law tracing rules apply to all pre-bankruptcy transfers despite the subsequent initiation of insolvency proceedings. Thus, if by using the common law tracing rules, the creditor can establish that a given account holds only proceeds, that account then falls under the rule of § 9.306(d)(1) which applies to separate deposit accounts containing only proceeds and the creditor's security interest remains perfected into insolvency.

Applying the above theory to the facts of the present case, the Bankruptcy Judge found that the Bank had successfully traced proceeds subject to its security interest into the joint checking account of the Debtor and her husband. Then, applying the lowest intermediate balance rule, the Bankruptcy Judge found that at the time

---

**2.** The Bankruptcy Judge denied discharge of $21,062.19 which debtor received from Kline's Department Store, holding that she had embez-

zled those funds. The denial of discharge of the $21,062.19 has not been appealed and is not before this Court for review.

of partition, all of the funds in the joint checking account were proceeds. It follows that the funds transferred to the debtor's new checking account were also exclusively proceeds. Thus, when insolvency proceedings were initiated, § 9.306(d)(1), the rule for separate deposit accounts, rather than § 9.306(d)(4), the rule for commingled deposit accounts, was applied to the debtor's Texas Bank of Amarillo checking account. Accordingly, the Bankruptcy Court held that the Bank retained its perfected secured status in the balance of that account of the Debtor.

■ On review this Court holds that the Bank did not retain its secured status in that balance for the following reasons. The purpose of U.C.C. § 9.306(d) is to substitute new rules of identification for general principles of tracing when dealing with an insolvency proceeding. To this end, the Official Comment to U.C.C. § 9.306 states in paragraph 2(a):

> [P]rior law generally gave the secured party a claim to the proceeds.... Whatever the formulation of the rule, the secured party, if he could identify the proceeds, could reclaim them or their equivalent from the debtor or his trustee in bankruptcy. This section provides new rules for insolvency proceedings. Paragraphs 4(a) through (c) substitute specific rules of identification for general principles of tracing. Paragraph 4(d) limits the security interest in proceeds not within these rules to an amount of the debtor's cash and deposit accounts not greater than cash proceeds received within ten days of insolvency proceedings....

These new rules for insolvency proceedings are exclusive and the creditor does not have the option to claim a greater sum received prior to the 10 days even if he is able to identify the greater sum as cash proceeds of the collateral. *In re Gibson,* 6 UCC Rep 1193, 1196 (Bkrtcy—Ok.1969); *In re Cooper,* 2 B.R. 188 (Bkrtcy, S.D.Tx.

1980); *In re Critigues, Inc.,* 29 B.R. 941, 36 UCC Rep 1778 (Bkrtcy—Kn.1983).

Under subsection (d), the secured creditor gives up the common law rights such as those under the lowest intermediate balance rule in return for the claim he receives under subsection (d). *In re Jameson's Food, Inc.,* 35 B.R. 433 (Bkrtcy—S.C. 1983) citing White & Summers, Uniform Commercial Code, 1013 (2d ed. 1980). When they eliminated the common law tracing rules, the authors of U.C.C. § 9.306(d) apparently believed that the hard and fast rules of identification contained in the statute were preferable to imprecise and time consuming tracing. *Id.* at 430. The use of common law tracing rules for those transactions occurring prior to the date of bankruptcy in order to determine which subsection of § 9.306(d) to apply, runs contrary to the apparent goal of the U.C.C. authors in promulgating the special identification rules for insolvency situations.[3]

■ The fact that previously commingled funds of a debtor may be identifiable prior to bankruptcy is irrelevant. The limitations placed upon a secured creditor's claim to commingled funds in insolvency are not derived from a loss of identity which may accompany commingling. In fact, § 9.306(d)(2) seems to admit the possibility that proceeds can be both commingled and identifiable. Nevertheless, under § 9.306(d), the limitation on common law tracing extends to all funds which have been commingled regardless of whether they are identifiable. *See, Recent Interpretations of Section 9.306(4)(d) of the Uniform Commercial Code,* 55 Tex.L.Rev. 891, 898 (1977).

That limitation should apply equally regardless of whether the identifiable funds were segregated from a commingled account prior to bankruptcy or were left in the initial commingled account. To hold otherwise, would create an anomalous situation wherein a creditor's position with re-

---

**3.** It should be noted at this point that the U.C.C. has not eliminated common law tracing princi-
ples in situations falling outside of insolvency.

spect to identifiable cash proceeds in an insolvency proceeding is improved by the unilateral and entirely coincidental activities of the debtor. The § 9.306(d)(4) approach promotes a more consistent treatment of parties claiming a perfected security interest in proceeds in insolvency proceedings.

A second consideration counsels against adopting the approach of the Bankruptcy Judge to the application of § 9.306(d). The Bankruptcy Judge found that the account created by the transfer of identifiable funds out of the previously commingled joint checking account fell within the "separate deposit account containing only proceeds" language of subsection (d)(1). However, it is doubtful that the account in question actually falls within the quoted language.

■ The emphasis here is on the use of the word "separate" to describe those deposit accounts which fall outside the grasp of subsection (d)(4). Logic dictates that the framers of the U.C.C. intended to create a limitation on the type of account, containing only proceeds, which would fall within the application of subsection (d)(1). Surely the framers understood that a general deposit account could, on occasion, by application of common law tracing rules, be found to contain only proceeds despite its previously commingled character. Nevertheless, the authors of the Code, as has already been stated, chose to reject the tracing approach in favor of the application of the subsection (d)(4) formula when dealing with deposit accounts which have been commingled.

To allow once commingled proceeds to acquire the character of proceeds in a separate deposit account requires the use of common law tracing rules. Such an approach is directly contradictory to the path chosen by the Code. One should note that the argument supporting the theory that a separate deposit account can be created by tracing funds from a previously commingled account, has no greater merit than the argument that the original commingled account itself could acquire separate deposit

account status by the use of the same common law tracing rules. Again, as a matter of policy, the framers decided against the continued use of general tracing in insolvency proceedings. Therefore, it is highly unlikely that the "separate deposit account" referred to in § 9.306(d)(1) includes those accounts composed entirely of proceeds which the creditor has traced using common law principles.

■ Accepting that the use of the word "separate" within the language of subsection (d)(1) was intended to limit the kinds of deposit accounts to which subsection (d)(1) applies, this Court should follow the approach of the court in *In re Cooper*, 2 B.R. 188 (Bkrtcy—S.D.Tx.1980), wherein the Court suggested that application of § 9.306(d)(1) be limited to those accounts specifically created and used for the deposit of proceeds of secured collateral. It is clear from the record that the accounts in the present cause were not so created. Therefore, rather than employing common law tracing principles in an attempt to create an account which would fall within the subsection (d)(1) language, subsection (d)(4) should be applied to these accounts.

Finally, even if this Court were to accept the Bankruptcy Court's theory allowing common law tracing prior to initiation of insolvency proceedings, there is a flaw in the application of that theory in the present case.

As the Bankruptcy Court's opinion recognizes, using the lowest intermediate balance rule, the greatest sum representing only proceeds in the joint checking account prior to partitioning, would be $10,684.10. However, the partition agreement purports to divide $10,713.56; a difference of $29.46. The difference can only be accounted for by including the non-proceed deposits made on the day of partitioning and subtracting the checks which were outstanding on the day of partitioning. Thus, the $5,356.78 which the debtor transferred to her new account at Texas Bank of Amarillo must have contained some non-proceeds at the time of its creation and should be considered a commingled account for the pur-

poses of applying § 9.306(d). Subsection (d)(4) would then apply.

ISSUES II & III *Constructive Trust and § 727.*

■ While this Court does not approve the Bankruptcy Court's use of common law tracing principles in its application of U.C.C. § 9.306, the use of the lowest intermediate balance rule is appropriate for the purpose of tracing the res of a constructive trust through the general bank account of the debtor. *See* 4 COLLIER ON BANKRUPTCY ¶ 541.13 at 541–73.

The Bankruptcy Judge has found that the monies transferred to Debtor's husband upon partition of the joint account constitute the res of a constructive trust of which William Martin is the trustee in favor of the Bank. *See* Order on Plaintiff's Motion to Amend Findings of Fact and to Make Additional Findings of Fact. Likewise, that Court found the Debtor's attorney to be constructive trustee of the $1,400.00 transferred to him out of one of the Kline's Department Store checks. *Martin,* 25 B.R., at 29.

■ The Bank argues on appeal that the Debtor should also be held a constructive trustee of that portion of funds which found their way into Debtor's individual checking account after the partition. However, the Court holds that the constructive trust issues with respect to Janice Martin and William Martin raise fact issues which preclude the entry of summary judgment.

Collier states that "one of the more common forms of constructive ... trusts created by conduct is that of the trust *ex maleficio* —that is, created by wrongdoing." 4 COLLIER ON BANKRUPTCY ¶ 541.13 at 541–71. This definition connotes an element of intent in the conduct of the wrongdoer. "The Court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind. Much depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances the jury should be given an opportunity to observe the demeanor, during direct and

cross-examination, of the witnesses whose states of mind are at issue." *Croley v. Matson Navigation Company,* 434 F.2d 73, 77 (5th Cir.1970). Accordingly, this Court concludes that determination of the constructive trust issues is inappropriate on summary judgment.

■ Likewise, § 727(a)(2) of the Bankruptcy Code provides that a debtor may be denied discharge if "the debtor, with *intent* to hinder, delay, or defraud a creditor ..., has transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition."

■ The explicit reference to the intent of the debtor in § 727 also makes determination of this issue inappropriate on summary judgment. Again, summary judgment is ordinarily not an appropriate vehicle for the resolution of a dispute involving state of mind and possibly conflicting interpretations of perceived events. *Schmidt v. McKay,* 555 F.2d 30, 37 (2nd Cir.1977).

Therefore, this case should be remanded to the Bankruptcy Court for further consideration of the constructive trust and the § 727(a)(2) issues.

ISSUE IV. *Propriety of Entering Summary Judgment for Nonmoving Party*

■ In its fourth point of error, the Bank argues that the Bankruptcy Court erred in entering a final judgment which holds, in part, against the Bank. Citing *Lowenschuss v. Kane,* 520 F.2d 255, 261 (2nd Cir.1975), the Bank correctly argues that a *sua sponte* award of summary judgment is only proper if the proofs offered by the parties establish that there are no undisputed facts and judgment for the nonmovant would be appropriate as a matter of law. However, "a moving party's failure to establish that the facts are undisputed does not entitle the non-moving party to summary judgment." *Id.* Further elaboration on this point is unnecessary in view of the Court's remand on those issues

which were decided unfavorably to the Bank.

It is so ORDERED.