In re BARSOTTI BROTHERS
BAKERY, INC., Debtor.

UNITED STATES of America, Plaintiff,

v.

BARSOTTI BROTHERS BAKERY, INC.
and James Moody, Trustee, Defendants.

Bankruptcy No. 84–1443.
Adv. No. 86–586.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 9, 1987.

Donald L. Phillips, Phillips and Galanter, P.C., Pittsburgh, Pa., for Barsotti Bros. Bakery, Inc.

James E. Moody, CPA, Pittsburgh, Pa., Trustee.

Philip E. Beard, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for trustee.

Mary N. Merman, Sp. Asst. to the U.S. Atty., Small Business Admin., Pittsburgh, Pa., for S.B.A.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is a *Complaint For Turnover* brought by the Small Business Administration (hereinafter "SBA") against the Trustee. The SBA alleges that certain funds in the Trustee's possession constitute proceeds of its perfected security interest in accounts receivable, and that said funds should be turned over to the SBA.

The Trustee argues that the funds have lost their status as proceeds, if in fact they were, in that they are no longer identifiable. Further, the Trustee argues that the SBA would only be entitled to such proceeds as were commingled within ten (10) days prior to the commencement of the insolvency proceedings; since the funds in question were commingled more than seven (7) months prior to the filing of the involuntary petition, the SBA has lost any security interest it may have had in same.

We find that the SBA has failed to meet its burden of proof, and therefore, dismiss its Complaint.

## FACTS

On December 18, 1980, Equibank loaned the Debtor $550,000.00 and entered into an agreement to secure same. Said loan was assigned to the SBA. The security agreement provides for the following collateral: inventory; books and records; invoices; contract rights; chattel paper; documents; general intangibles; and the proceeds thereof. These secured interests were perfected by the filing of financing statements with the appropriate state and local offices on January 19, 1981. During the course of the Debtor's business, it regularly made deposits into its General Operating Account at Equibank. This account was used for the deposit of daily receipts, proceeds from the sale of certain equipment, loan proceeds, and capital injections from the own-

ers. This account was also used for all disbursements.

The Debtor had an additional bank account in Washington, D.C., having been created for the express purpose of building a sum sufficient to bring the company current on its pension obligations.

On July 9, 1984, an involuntary bankruptcy was filed against the Debtor; the case was subsequently converted to a voluntary Chapter 11 and a trustee was appointed by consent of all parties on October 30, 1984. Thereafter, the Trustee obtained control of the funds in the Washington bank account; it is this fund which the SBA seeks to obtain through this turnover action.

Specifically, the SBA asserts that the funds in the Washington bank account are proceeds from the Debtor's accounts receivable and are therefore collateral for SBA's security interests.

## ANALYSIS

We begin our analysis with a recitation of the pertinent statutory language found in Pennsylvania's Uniform Commercial Code 13 Pa.C.S.A. § 9306(d), which states as follows:

(d) **Effect of insolvency proceedings.**— In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(1) in identifiable non-cash proceeds and in separate deposit accounts containing only proceeds;

(2) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(3) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(4) in all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds but the perfected security interests under this paragraph is:

(i) subject to any right of set-off; and

(ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten (10) days before the institution of the insolvency proceedings less the sum of:

(A) the payments to the secured party on account of cash proceeds received by the debtor during such period; and

(B) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (1) through (3).

We will address each section seriatum.

■ The first type of proceeds in which a security interest can continue is identifiable non-cash proceeds. A simple example of this would be the receipt of an accounts receivable payment which was used to purchase a piece of equipment. Section 9306(d)(1) also allows for a continuing perfected security interest in proceeds found in a separate deposit account which contains only proceeds. The application of this section is limited to those accounts which are specifically created and used for the deposit of proceeds of secured collateral. *See First National Bank of Amarillo v. Martin,* 48 B.R. 317, 40 U.C.C. Rep. Svc. 1521 (S.D.Tex.1985).

In the case at bar neither situation is present, in that we have no assertion of the existence of non-cash proceeds nor a claim that a separate and distinct account was created for the deposit of SBA's secured proceeds.

■ Section 9306(d)(2) allows for a continuing security interest in identifiable cash proceeds "on hand", i.e. monies which have been segregated but not deposited into any type of account prior to the insolvency proceedings. No testimony as to same has been provided; therefore, we must assume that this particular subsection is inapplicable.

■ Section 9306(d)(3) is similar to subsection (2) except that in this case we are

dealing with negotiable instruments such as checks rather than legal tender. Again, we have been provided with no testimony indicating that specific checks representing accounts receivable were held by the Debtor "on hand" and undeposited prior to the insolvency proceedings.

█ Section 9306(d)(4) has substituted, for conventional tracing techniques, a formula designed to determine the extent of the secured party's protected interest in commingled proceeds. The authors of the Uniform Commercial Code apparently believed that the hard and fast rules of identification contained in the statute were preferable to imprecise and time-consuming tracing processes. *Maxl Sales Company v. Critiques, Inc.*, 796 F.2d 1293, *1 U.C.C. Rep. Svc.2d 1338 (10th Cir.1986); Fitzpatrick v. Philco Finance Corporation*, 491 F.2d 1288, 14 U.C.C. Rep. Svc. 12 (7th Cir.1974); *First National Bank of Amarillo v. Martin, supra; In re Security Aluminum Company*, 9 U.C.C. Rep.Svc. 47 (E.D.Mich.1971); *In re Critiques*, 29 B.R. 941, 36 U.C.C. Rep.Svc. 1778 (Bankr.D.Kan. 1983); *In re Jameson's Foods, Inc.*, 35 B.R. 433, 37 U.C.C. Rep.Svc. 1381 (Bankr. D.S.C.1983); *In re Cooper*, 2 B.R. 188, 28 U.C.C. Rep. Svc. 176 (Bankr.S.D.Tex.1980). Pursuant to this subsection, the secured creditor is only entitled to commingled cash when it is received as proceeds of collateral within 10 days of the commencement of the insolvency proceeding, less any proceeds received by the debtor and paid over to the creditor within that same 10–day period. These new rules for insolvency proceedings are exclusive and the creditor does not have the option to claim a greater sum received prior to the 10 days, even if he is able to identify the greater sum as cash proceeds of the collateral. *Maxl Sales Company v. Critiques, Inc., supra; Fitzpatrick v. Philco Finance Corp., supra; First National Bank of Amarillo v. Martin, supra; In re Security Aluminum Company, supra; Howarth v. Universal C.I.T. Credit Corporation*, 203 F.Supp. 279, 1 U.C.C. Rep. Svc. 515 (W.D.Pa.1962); *In re Glaubinger Machine Company, Inc.*, 58 B.R. 38, 42 U.C.C. Rep.Svc. 1807 (Bankr. D.N.J.1986); *In re Critiques, supra; In re*

*Guaranteed Muffler Supply Company, Inc.*, 1 B.R. 324, 29 U.C.C. Rep.Svc. 285 (Bankr.N.D.Ga.1979).

█ This 10–day period in § 9306(d)(4)(ii) is calculated from the date of the institution of the insolvency proceeding. An "insolvency proceeding" is defined in § 1201 as "a proceeding intended to liquidate or rehabilitate the estate of the person involved." *See also, In re Conklin's, Inc.*, 14 B.R. 318, 32 U.C.C. Rep. Svc. 1002 (Bankr.D.S.C.1981). In the case at bar, therefore, the 10–day period prior to insolvency would be the 10 days prior to the filing of the involuntary petition on July 9, 1984. None of the testimony provided by the SBA relates to any period of time after December 1983; therefore, the SBA has failed to meet its burden of proof as to proceeds deposited into the general operating account during the 10–day period prior to the filing of the involuntary petition.

█ SBA has directed this Court's attention to several cases which stand for the general proposition that tracing should be permitted even in the case of commingled funds. Initially we note that none of the cases cited by the SBA involve any type of insolvency proceedings, state or federal. Be that as it may, even if we were to permit SBA's tracing attempts, we find them woefully inadequate. SBA has presented "testimony" which consists of a foot of manila folders filled with copies of checks, bank statements, and the Debtor's cash journals for various days. The SBA asserts that in this manila menagerie we can find the requisite evidence, i.e. we would be able to determine that the funds in the Washington, D.C. bank account were paid into that account directly from accounts receivable received by the Debtor.

To further bolster its position, the SBA produced the self-serving testimony of the Debtor's guarantor, who stated, almost as an aside, that the funds in question could be traced, even though fungible and commingled, as they were turned over every 2–3 days. The SBA provided no officer or bank representative to support and/or verify this assertion by the Debtor's guarantor.

This Court is not obliged to prove the SBA's case. The pattern which the SBA requires this Court to follow would involve our examination of every bank statement, every check and every cash journal entry, and cross-referencing of same in order to show that certain transactions occurred at the time as represented. Given the present state of the SBA's evidence, it would not be possible for this Court to make such a determination, even if we were inclined to prosecute this case on the SBA's behalf. Since we view our role in this procedure as other than that of advocate, we decline to do so.

This entire problem would have been avoided, if the SBA had required the Debtor to maintain separate accounts for the secured funds. As this procedure was not followed, and as the SBA has been unable to meet its burden of proof, its claim must be dismissed.

An appropriate Order will be issued.