**In re LITAMAR, INC., Debtor.**

**Bankruptcy No. 92–30044.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

July 22, 1993.

Raymond L. Beebe, Toledo, OH, for debtor.

Thomas W. Heintschel, Toledo, OH, for D.M. Reid & Assoc.

Mary Ann Whipple, Fuller & Henry, Toledo, OH, for Chrysler First Commercial.

Verne K. Armstrong, Toledo, OH, for IRS.

James M. Perlman, Toledo, OH, for Trustee.

John J. Hunter, Trustee, Toledo, OH.

Laurie J. Pangle, First National Bank of Toledo, Toledo, OH, for Fifth Third Bank.

Russell Miller, Toledo, OH, for Perrysburg Marketplace.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon D.M. Reid Associates, Ltd./Midwest's (hereafter "D.M. Reid") Motion for Order Compelling Trustee, John J. Hunter, (hereafter "Trustee") to Turnover Funds Under His Control. At the evidentiary Hearing, the parties were afforded the opportunity to present evidence and arguments they wished the Court to consider in reaching its decision. In addition, all parties were ordered to submit briefs on this issue. The Court has reviewed the written arguments of counsel and exhibits introduced, as well as the entire record in the case. Based upon that review, and for the following reasons, a decision regarding D.M. Reid's Motion for Order Compelling Trustee to Turnover Funds under His Control should be Delayed Twenty-one (21) days in order to allow D.M. Reid the opportunity to submit additional evidence regarding its case.

### FACTS

In October, 1991, D.M. Reid and the Debtor Litamar, Inc. d/b/a Beds, Bedrooms & More, (hereafter "Litamar") entered into a Sales Promotion Agreement and a Consignment Agreement. In accordance with the Consignment Agreement, D.M. Reid was to provide Litamar with consigned inventory for the sale contemplated in the Sales Promotion Agreement. The liquidation sale which generated the deposit account at issue began in mid-November of 1991; continued through the Debtor's filing of Chapter 11 on January 6, 1992; and terminated with the conversion of the Chapter 11 to a Chapter 7 on January 29, 1992.

It appears that during this particular time period there were two sales going on at the same time. One sale involved the Debtor's inventory in which other Creditors, such as Chrysler First Commercial Corporation (hereafter "Chrysler First") and Fifth Third Bank (f/k/a First National Bank of Toledo), had prior perfected security interests. The other sale dealt with

inventory initially brought in by D.M. Reid and of other inventory bought during the sale by D.M. Reid. According to Mark Pimental of D.M. Reid, all D.M. Reid's consigned inventory was identified with a stamp on the tag to designate it as consigned inventory. In contrast, non-D.M. Reid inventory did not have a stamp. Although the furniture was supposedly tagged, the proceeds from the sale of furniture belonging to both sides were deposited together. One checking account was set up and used to receive deposits from both sales. The same account, known as the Sale Account, existed only in the name of the Debtor, Litamar, and was used from the commencement of the liquidation sale until Chapter 7 conversion on January 29, 1992. The manner in which deposits and withdrawals were made involving the account remained the same both before and after the filing of Chapter 11.

Mark Campbell of Litamar, Inc. claimed that at the start of the liquidation sale, there existed an inventory worth approximately Eighty Thousand and 00/100 Dollars ($80,000.00) at the Perrysburg operation. Campbell also claimed that after Fifth Third Bank seized the remaining Litamar inventory at the site in the beginning of January 1992, the value of the goods present was reduced down to Forty Thousand and 00/100 Dollars ($40,000.00). However, neither the Debtor nor D.M. Reid provided any written proof other than the testimony of Campbell himself to back up such a claim as to both the value of the inventory upon commencement of the sale and after Fifth Third's removal of the goods.

Both sides are in agreement that the Sale Account has contained commingled funds since its creation until the Chapter 7 conversion. According to evidence provided in the record, there were at a minimum three different sources of funds deposited into the account: advance customer deposits for available inventory, proceeds of D.M. Reid consignment inventory; and proceeds from the sale of Debtor's inventory. No attempt was made at any time to separate any of these funds into different accounts. Fur-

thermore, all proceeds from any of the two sales going on were deposited into the same bank account. No attempt was made to differentiate proceeds from non-D.M. Reid inventory from D.M. Reid inventory.

On January 29, 1992, Debtor's Chapter 11 case was converted to a Chapter 7. At that time, the Trustee seized Debtor's bank accounts and terminated payments on all checks drawn on the Sales Account at that time. The proceeds available at the time the Trustee seized the account were Fifty-seven Thousand One Hundred Fifty-five Dollars and Thirty-four Cents ($57,155.34). This is the amount which D.M. Reid seeks to be turned over to it by the Trustee according to its initial motion on the instant issue, together with interest that has accumulated on that sum. In D.M. Reid's Post-Hearing Brief, D.M. Reid later concedes that it is entitled to Forty-four Thousand Six Hundred Twenty-five Dollars and Sixty-eight Cents ($44,625.68) plus interest from the Trustee. The difference in amount from its initial claim is due to its realization that it is not entitled to consumer deposits received by D.M. Reid in the sum of Fourteen Thousand Eight Hundred Eighty-one Dollars ($14,881.00).

On July 29, 1992, D.M. Reid filed a Motion for an Order Compelling the Trustee to Turnover Funds under His Control. Perrysburg Marketplace Company, the Trustee and Chrysler First filed objections to D.M. Reid's Motion. During the Hearing of August 18, 1992, the Court ordered the Trustee to file a status report within thirty (30) days regarding communications or Memorandums of Law from any of the parties in interest. The status report was filed by the Trustee. In a Hearing on the Motion for Turnover held on February 9, 1993, the Court ordered that counsel for all parties to submit closing briefs regarding their position on the instant issue by February 23, 1993. D.M. Reid filed a Brief, and the Internal Revenue Service (hereafter "IRS") and Chrysler First filed Memoranda.

## *LAW*

11 U.S.C. 552(b) of the Bankruptcy Code reads as follows:

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and hearing and based on the equities of the case, orders otherwise.

UCC 9–306(4) reads as follows:

"(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(a) in identifiable non-cash proceeds and in separate deposit accounts containing only proceeds;

(b) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) in all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this division is:

(i) subject to any right to set-off; and

(ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings, less the sum of (I) the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection (4)"

## DISCUSSION

This case is a core proceeding under 28 U.S.C. § 157(b)(2)(E) for the reason that the bank account funds are property of the Debtor's estate.

In support of its motion, D.M. Reid asserts that the funds it claims are proceeds of its consigned inventory and are subject to the perfected security interest of D.M. Reid. It claimed in its Post–Hearing Brief that it has properly traced the proceeds in the Sale Account presently being held by the Trustee through application of the lowest intermediate balance rule for the purposes of establishing its right to receive the funds of the Sale Account. It has admitted, however, that it is not entitled to customer deposits for furniture that was never delivered in the sum of Fourteen Thousand Eight Hundred Eighty-one Dollars ($14,-881.00) which were received during the time it was involved in the liquidation sale. That decreases the amount that D.M. Reid is claiming to Forty-four Thousand Six Hundred Twenty-five Dollars and Sixty-eight Cents ($44,625.68) plus interest from the Trustee. In addition, D.M. Reid also argues against the application of the Ten (10) Day Rule pursuant to UCC 9–306(4) in the instant case. This Ten (10) Day Rule deals with the tracing of commingled proceeds and requires the occurrence of a insolvency proceeding after the commingling of proceeds. When applicable, this rule limits the sum which a secured party can recover when cash proceeds of collateral are commingled with other monies of the Debtor to the amount received by the Debtor during the ten (10) days preceding the institution of insolvency proceedings less the sum of payments to the secured party on account of cash proceeds received by the Debtor. The applicability of the Ten (10) Day Rule to this case will be discussed further on in this opinion.

In response to the arguments put forth by D.M. Reid, Creditor Chrysler First asserts that the commingled funds cannot be turned over to D.M. Reid by the Trustee as D.M. Reid has not successfully traced the funds in the Sale Account to the sale of D.M. Reid consigned inventory. Chrysler First argues that D.M. Reid failed to meet its burden of proof and that its request for the proceeds in the Sale Account is premature. It further argues that the Ten (10) Day Rule under UCC 9–306(4)(d) applies to the facts of this case.

■ The first issue before the Court is whether UCC Section 9–306(4)(d) is applicable in the instant case. The wording of 11 U.S.C. Section 552(b) of the Bankruptcy Code, a Section which deals with a secured creditor's right to proceeds, reveals that it is subject to the applicable nonbankruptcy law. As stated by Chrysler First in its memorandum, many courts have held that the Uniform Commercial Code Section 9–306(4) fits into this description as the applicable nonbankruptcy law in this particular situation. *In re Trans–Texas Petroleum Corporation*, 33 B.R. 67 (Bankr.N.D.Texas, 1983); *In re Barsotti Brothers Bakery, Inc.*, 80 B.R. 745 (Bankr.D.Pa.1987); *In re Conklin's, Inc.*, 14 B.R. 318 (Bankr.D.S.C. 1981). There is no dispute as to the presence of commingled funds in the Sale Account. As such, subsection (d) is the only one that applies to the instant case as it deals with commingled funds in insolvency proceedings. In accordance with reasoning put forth by Chrysler First, it can be said that the three cases which D.M. Reid cites to support its view that UCC 9–306(4) does not apply are all irrelevant as these cases listed concern a dispute regarding proceeds entitlement in an ongoing Chapter 11 case with no conversions. *In re Hugo*, 58 B.R. 903, 905–907 (Bankr.E.D.Mich.1986); *In re Bumper Sales, Inc.*, 907 F.2d 1430, 1437–1438 (4th Cir.1990) and *In re Aerosmith Denton Corp.*, 36 B.R. 116, 118 (Bankr. N.D.Tex.1983). The present case deals with a Chapter 11 case that was converted to a Chapter 7. Chrysler First cites a number of cases which involve the application of UCC 9–306 when there has been a conversion. *In re Trans–Texas Petroleum*

*Corporation*, 33 B.R. 67; *In re Conklin's, Inc.*, 14 B.R. 318; *In re Barsotti Bro.*, 80 B.R. 745. As the evidence clearly shows that the contents of the bank account are commingled funds, it is established that 9–306(4)(d) applies to the instant case.

■ The next issue which the Court must consider is whether D.M. Reid has met the burden of proof in establishing that it can trace its monetary claim to proceeds from the sale of D.M. Reid consigned inventory which are presently held by the Trustee. These elements, as described by Chrysler First in its Post–Hearing Memorandum, are as follows:

1) The amount of cash proceeds received by the Debtor during the ten (10) days before the institution of insolvency proceedings must be ascertained. The secured party has the burden of establishing this.

2) From the amount arrived at in Step 1, any amounts paid to the bank during the ten (10) days prior to filing the petition are to be deducted.

3) The amount to which the secured creditor is rightfully entitled to claim is the amount in step 1 subtracted by the amount in step 2.

This formula can be found in several places including in White and Summers UNIFORM COMMERCIAL CODE Section 25–10 at 4678 (3d edition) and in *In re Datair Systems Corp.*, 42 B.R. 241 (Bankr.N.D.Ill.1984). Upon consideration of the formula provided and accurately advocated by Chrysler First, it is clear that D.M. Reid failed to meet the first element in establishing its burden of proof. D.M. Reid does not even establish for the Court that it can meet the burden of proof by satisfying the clear and convincing standard of proving evidence. *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 457 (6th Cir.1982). Although the overall deposits made into the bank account can be established by examining checkbook records (Movant's Exhibit E), D.M. Reid offers no evidence to identify what part of the gross deposits made to the Sale Account comprise proceeds from the sale of its own consigned inventory. Testi-

mony provided by Pimental and Campbell alone as to how much non-D.M. Reid inventory was sold during the relevant time period does not meet D.M. Reid's burden of proof in establishing that it is entitled to the proceeds of the Sale Account. It failed to provide any proof as to the amount of the non-D.M. Reid proceeds and advance customer deposits put into the Sale Account in contrast with its own proceeds which were realized during that particular time period. As such, there is no way to show that D.M. Reid is entitled to the full amount that it is claiming that the Trustee should turnover.

If D.M. Reid would have been able to trace the funds in the Sale Account to proceeds of the sale of D.M. Reid inventory, date of commencement of the ten (10) day period under 9–306(4) to which D.M. Reid's secured interest would have been limited would have also been an issue for this Court to decide. The Court would have had to decide if the date of commencement of the first insolvency proceeding was ten (10) days prior to the filing of Chapter 11 on January 6, 1992 or ten (10) days preceding Chapter 7 conversion on January 29, 1992. However, the Court does not have to rule on this particular issue because D.M. Reid has failed to prove what amount of the gross deposits made to the Sale Account in either time period constitute its own proceeds. D.M. Reid simply has not put forth the necessary evidence to provide the Court with proof as to the value of the D.M. Reid goods sold during the relevant time frame.

The parties in addition to Chrysler First who filed objections to the Motion for an Order Compelling Trustee to Turnover Funds all felt that the Trustee should not be compelled to turnover the account funds to D.M. Reid. Perrysburg felt that it had a priority to the funds in terms of rents due to it from the Trustee as administrative expenses. The IRS argues with the same reasoning as that put forth by Chrysler First. The IRS feels that because D.M. Reid has failed to prove that the sale of only its own furniture created the proceeds in the Sale Account presently held by the Trustee, it cannot be granted the turnover of such funds. The Trustee has stated that the Court should be the one to decide who the money should go to but that it should first recover all of its administrative expenses first. All objectors agree that D.M. Reid has failed to identify the proceeds from its own inventory. By failing to meet that burden of proof, the objectors establish that D.M. Reid is not entitled to recover any monies under the control of the Trustee.

While it is clear that the movant in the instant case has not proved that D.M. Reid is entitled to the entire Sale Account, it is the opinion of the Court that D.M. Reid is entitled to receive its percentage of the proceeds from the sale of D.M. Reid inventory which are presently being held by the Trustee. The evidence provided thus far, however, does not allow the Court to come to the conclusion that D.M. Reid is entitled to receive the Forty-four Thousand Six Hundred Twenty-five Dollars and Sixty-eight Cents ($44,625.68) that it claims in its Motion. The Court hereby gives D.M. Reid until 4:00 P.M. on August 9, 1993, to submit any evidence, exhibits, affidavits that indicate what part of the gross deposits made to the Sale Account during the relevant time period constitute its own proceeds.

In reaching the conclusion found herein, the court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

ORDERED that a decision on D.M. Reid's Motion to Compel Trustee to Turnover Funds in the amount of Forty-four Thousand Six Hundred Twenty-five Dollars and Sixty-eight Cents ($44,625.68) plus interest from February 9, 1993 until it is paid in full should be, and is hereby, be DELAYED until after 4:00 P.M. on August 9, 1993, prior to which D.M. Reid must submit further evidence that it wishes the Court to consider. If D.M. Reid fails to file as instructed, its Motion will automatically be denied without further hearing.